## ISAAC H. PARRISH v. WILLIAM BRADLEY.

*Contract of employment—Evidence—Questions for jury.*

1. Where there is some evidence tending to establish the claim of the plaintiff, its weight and sufficiency are for the jury.

2. Where a plaintiff introduced in evidence a letter from the defendant, upon which he relied to support his claim of employment by the defendant, which letter referred to one received by defendant from a third party, and which caused defendant to write the letter to plaintiff, as he claimed, the letter so received is admissible in evidence.

3. The remaining points decided in this case are so connected with the facts as stated in the opinion as to render an examination of the opinion essential to a correct understanding of the same.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued January 24, 1889. Decided February 1, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson,* for appellant.

*Ward & Ward,* for plaintiff.

MORSE, J. It is claimed by the plaintiff that the defendant came to his office while he was acting as judge of the superior court of the city of Grand Rapids, and talked with him in reference to defendant's interest in a silver mine at Laramie, in the territory of Wyoming, and stated that if he (the plaintiff) was not re-elected judge, he wanted him to go out there for the defendant, and look after his silver mining interests. Defendant stated that his intention was to organize a joint-stock company, and wanted plaintiff to open the mine up, set men at work at it, developing it, and selling stock; and if plaintiff was not re-elected, and would go out there, defendant would make it more profitable to him than the judgeship. The judge was not a candidate for re-election, and a few days after his term of office expired the defendant came to him and asked him if he was ready to go to Laramie. Plaintiff replied that he was all ready. Defendant said that he was obliged to go to Ohio for two or three days, and then he would be out to Laramie. This was all that plaintiff testifies there was said about it. He went to Laramie, and made himself acquainted with the business men of Laramie, especially those interested in mining, and newspaper men. He also endeavored to ascertain the reports of experts with reference to the "Michigan Mine," which was the mine of the defendant. He remained there 30 days, but Mr. Bradley did not come. Plaintiff states that he had one letter from defendant, in which he did not give him much satisfaction whether he would be there or not. He did not go to the mine, which was between 30 or 40 miles from Laramie.

"There was nothing going on there, and I didn't think it was worth my while to go there, and look down in the hole."

He found out some of the men who had shares in the mine, and talked with them in regard to the condition of the mine.

"*Q*. What did you ascertain in regard to the condition?

"*A*. Well, I found they had been digging there for some time; and had a hole in the ground; and they told me how deep it was, but I have forgotten; and I saw a large collection of what they called 'quartz' that they had taken out, and it was in Mr. Downey's office. Mr. Downey, as I understand it, owned an interest in the mine. I only understood that; I don't know that he did, except what he told me."

He had no correspondence with Mr. Bradley, except one letter that he received from him, which he answered. The letters are given below:

"OFFICE OF WILLIAM BRADLEY,
"PARKSVILLE, SULLIVAN CO., N. Y., May 25, 1887.
"ISAAC H. PARRISH,
"Laramie, Wy. Ter.

"*My Dear Sir:* I received a letter on my return home Tuesday, May 24, from William J. Long, which arrived here nearly a week ago, stating that you had arrived at Laramie all well and sound. Well, I am sure that you are well pleased with the place, also the people, and the longer you stay the better you will like the place and the people. You must get acquainted with Col. Downey, C. F. Sheldon, and Simons, all first-class brothers. I am going to Grand Rapids sometime next week to see what the Innises and Wolcott has concluded to do on the mine. Myself and Crary wants the work to go forth. I have got too much money in it to let it stand still at present. I want something out of it, or lose more with it. I do not know what the trouble is among those that are interested in the property with me at Grand Rapids; some disagreement among them.

"I would like to have them organize the company, and put a head on the business, and go to work in a business way; this is what I would like to do, and the sooner the

better for all. I wrote to L. W. Wolcott last week, asking him if he would go to Laramie with me in June. I have no answer to the question yet. I am sorry that I had not been ready to left the time you did. It is a long, lonesome road for such an old plug as I am to start out on alone; still I feel like a bay mouse, ready for anything. Now, Judge, you have been in Laramie long enough to pick up considerable news, and have heard considerable what is said about the business of the town and the country around it, and what is said about the mining business. Do you hear anything said about the Centennial mining district; whether there is anything going on there this season; or if any one ever makes mention of the Michigan mine, and the shape that it is in, and the way that business has been conducted there from the time we started to work on it nearly two years ago? I want you to gather up all the news you can in regard to it, and write to me at Grand Rapids, Bridge-street House, and give me your ideas from what you can gather up. I will write Mr. Long a letter for to-morrow's mail. We get one mail a day each way only. My best respects to yourself, Col. Downey, Sheldon, Simons, Long, and Rathbun. I am well and happy as a whippoorwill.

"WILLIAM BRADLEY."

"LARAMIE, May 30, 1887.

"MR. WILLIAM BRADLEY:

"I wrote you yesterday. I do not hear much said here about mines. The Centennial is not being worked now. I am inclined to think that those who pretend to represent the Michigan mine here, and especially those who claim to represent your interest, are throwing cold water on the whole business. You had better come here yourself. I think there is money in that mine, but of course I have not seen it, and can only judge from hearsay, and that is only slight. I wrote you, I think, that Mr. Hollister and Mr. Withey passed through here night before last on their way to Utah, to look after their mining interests; they mean business, and those who expect to realize money from the Michigan mine or Centennial mine must mean business also. There is no doubt in my judgment but there is money in both these mines, but it can never be got by men who sleep all day and 'bum' all night. Let me hear from you. If you are not coming here I shall probably not remain. I think I shall stay

until you come or I hear from you. I think I have made
the acquaintance of all the principal men in and about
Laramie. I have visited several ranches; at one I spent
three days, and had a very grand time.

"You write me that you have written to Wolcott
requesting him to come here. If you expect anything
from him or the Innises to develop your mine, you had
better sell out at once.        Yours truly,
                        "ISAAC H. PARRISH."

The letter from Long, referred to in Bradley's letter,
was offered in evidence by defendant, but excluded. It
reads as follows:

                        "LARAMIE, WYO., 5–16, 1887.
"WILLIAM BRADLEY,
                "Parksville.

"Dear Sir: There is nothing new since my last, only
Judge Parrish, of Grand Rapids, is here, and I think he
will locate here; he likes the country so well. He wants
to know when you are coming out, and is anxious to
see you. You better write him here.
                        "Yours truly,
                        "W. J. LONG, Jr."

The plaintiff testifies that his expenses to Laramie and
back were $56.15, each way, and at the hotel there for
four weeks, $56, and he spent some money besides, get-
ting acquainted with people; that his services for 30
days were worth $25 per day. He went to Laramie
about May 7 or 8, 1887. He saw Mr. Long, and talked
with him about the mine, and knew he was interested
in it, but did not inform him that he was in the employ
of Bradley. Could not tell where the mine was located.
Had no instructions from Bradley what to do when he
went there, and received none from him while there.
He testifies that he did not spend two days' time in
investigating the mine, and did no work except to
inquire about the mine, and get acquainted with people.
Had no contract with defendant what he should be paid,
or that he should be paid at all, except what was said.

in the conversation above given in his office at Grand Rapids. Saw Bradley after he came back, but said nothing to him about the mine, or pay for his services. Only caught glimpses of him on the street. Called for him once at the Bridge-street House, but he was gone. When Bradley returned to Grand Rapids he expected he would call upon him. As he did not do so plaintiff made up his mind he would not call to see defendant. February 23, 1888, he commenced this suit in the superior court for the city of Grand Rapids, in *assumpsit,* claiming $950 for services and expenses. He obtained a verdict for $756, and judgment was entered against the defendant for that amount.

The chief objection against this verdict and judgment is that there was no evidence to go to the jury in support of it. It is certainly a remarkable case upon the plaintiff's own showing, and there is much force in the argument of defendant's counsel that, upon the testimony of the plaintiff, and the letters passed between the defendant and himself, the verdict should have been directed against him.

The defendant admitted that he had a talk with plaintiff, and told him that he thought he better go to Laramie; that he could do well there; that it would be a good place for the judge to open up a law business; that in the spring of the year the defendant thought they would develop the mine, form a stock company, and would require more or less of a lawyer to do the business, and whatever they had to do they would give it to plaintiff. Had no intention of hiring him to go out there, and the matter passed out of his mind, and he gave it no more thought. Met him afterwards on the street, and said to him, " You haven't gone yet." "No," plaintiff said, but " he guessed he had made up his mind to go." Defendant told him he wished he could go with him, but he

could not. This was all the talk he had. Wrote the letter to him because of the letter he received from Long, and for no other reason. Never heard that plaintiff claimed that he had gone to Laramie in the employment of defendant until he was sued.

The plaintiff introduced some corroborating testimony to support his case. Thomas B. Church testified that he heard a conversation in Judge Parrish's office between him and the defendant, before plaintiff went to Laramie, and before the judicial election, which took place in April, in which talk the defendant spoke about the plaintiff's going to Laramie. The substance of what he said was this:

"I am glad that you can go to Laramie. I can have my business taken care of, and I want just such a man. I want somebody that knows the law, and somebody that will take care of my business; and you can do well out there; you can do a great deal better there than you did here. I am glad you are going."

The plaintiff gave assurance in the conversation that he would go, and was getting ready to do so. Defendant said to Church:

"He is the right man; he could put confidence in him; he was glad to have such a man there."

O. C. Ransom, an attorney, residing in Grand Rapids, testified that at one time he was in Chicago, and met defendant there at the Commercial Hotel, and had some talk about his mine. Defendant said he was on his way west, or about to go west, to look after his interest in mining property. Ransom jokingly said:

"You had better take me along with you. I am in Chicago, and it will save you expense."

Defendant replied that he had an attorney already in Grand Rapids, and expected him to go there. This was

in the fall of 1886 or spring of 1887; the witness could not remember which.

This was the plaintiff's case as to the contract. But we think the court was right in not taking it from the jury. Whatever may be our opinion as to the facts, there was some evidence tending to show an employment, and, however slight and unsatisfactory it may seem to us, the weight and sufficiency of it were for the jury.

We think, however, that the court erred in excluding the letter written by Long to Bradley. The letter from defendant to plaintiff was introduced by plaintiff, and relied upon to support his claim of employment. That letter referred to a letter from Long. Defendant claimed that he only wrote to Parrish because of this letter; and we think he was entitled, under the circumstances, to put it in evidence.

The court also erred in instructing the jury that if the plaintiff went to Laramie in the employment of the defendant, under an agreement that the defendant would also go to Laramie in a short time,—

"*And that the plaintiff should wait for the defendant there,* then the plaintiff would have a right to remain in Laramie until he received notice from the defendant that his services were no longer wanted, or until such lapse of time as would reasonably and naturally convince the plaintiff that defendant did not desire his services there."

There was no testimony in the case that it was agreed that plaintiff should go to Laramie, and then remain until the defendant came there. The plaintiff testifies that there was no agreement when he should start; and, after the defendant said he was going to Ohio for two or three days, plaintiff waited four or five days for him to return to Grand Rapids, and, as he didn't come back, he "started on." And the letters negative, if they have any weight, any idea that there was any such agreement.

The plaintiff states in his letter that he had written the defendant the day before, but testifies on the stand that he wrote but one letter, to wit, the one given in the record.

While the jury might have been warranted under the evidence in finding a verdict in favor of the plaintiff for his time and expenses in going to Laramie and returning, and for a few days at Laramie, there was no evidence by which he could recover for a sojourn of 30 days there at $25 per day, when he did absolutely no work except getting acquainted and talking with people. He had no right, under his own showing, to go out there with no instructions whatever from defendant as to what he should do in defendant's interest, and then stay there from day to day, without trying to find defendant's whereabouts, and without making a single move in defendant's behalf, without apprising a single person that he was interested for defendant, and not caring to go to the mine to see it, although invited by Long to do so, and then charge the defendant attorney's fees for doing nothing, on the ground that he was justified in staying there until defendant came, when there was no agreement that he should wait there for defendant. When he arrived at Laramie, if in the employ of the defendant, and the defendant did not come as he expected, and he knew not what to do in his employment, he should have taken reasonable means to find out where the defendant was, and what he wanted him to do. This he did not do, on his own showing, and we do not think he could recover for any expenses or services at Laramie, after the first few days of his sojourn there, because he failed to do so. In short, his conduct at Laramie does not seem to be entirely consistent with the idea that he supposed himself at the time to be waiting or working under promised pay from defendant or in his service. The

court correctly charged the jury, in this respect, at the request of defendant's counsel, as follows:

"The fourth I give: 'It is incumbent on the plaintiff to have a definite agreement with the defendant that he was employed by him before he was justified in expending time and money for which the defendant was to be held liable; and if he was in fact so employed, it was also his duty to use reasonable prudence and diligence to procure instructions as to the nature of the service expected of him, and the time when it was to be rendered; and if, without having such instructions, he begun or attempted to begin the performance of any services for the defendant, and, after having made the commencement, he came to a stop for a lack of instructions as to what to do, and remained for days and weeks without making any effort to inform the defendant of his situation, or to ask for instructions, he cannot recover anything for the time so wasted, nor for expenses incurred during such time.'"

But he qualified it by saying in explanation that this definite agreement might be one to perform generally, and further said in that connection:

"And it is not necessary in order for plaintiff to recover in this case that there should have been a certain amount of money agreed upon as the consideration to be paid for the services of the plaintiff by the defendant, and, in the absence of such specific amount being agreed upon, the person performing is entitled to what his services were reasonably worth, as you find from the testimony in the case."

While this is good law in the abstract, it is claimed by counsel for the defendant that it obscured the vital point in this fourth request, which they had a right to present to the jury as it was, and that the jury were thereby misled; that it caused them to overlook the question of plaintiff's right to stay at Laramie without instructions, and without seeking any, and charging defendant for time and money wasted in waiting there under such circumstances. From the size of the verdict in plaintiff's favor, we should deem this claim to be well founded. Defend-

ant was entitled to the instruction as he asked it,. and the explanation was unnecessary. See *Cook v. Brown,* 62 Mich. 473 (29 N. W. Rep. 46); *Babbitt v. Bumpus,* 73 Id. 331 (41 N. W. Rep. 417).

The judgment of the court below must be reversed, and a new trial granted, with costs.

The other Justices concurred.