STEELE *v.* CITY OF IONIA.

1. APPEAL AND 'ERROR—ADMISSIONS OTHERWISE PROVED.

If it was error for the trial court to refuse to receive in evidence the files of a chancery case, offered for the purpose of showing certain admissions of defendant in its answer therein, it was without prejudice where said admissions were either established by other testimony or are such that the conclusion of this court would not be changed thereby.

2. MUNICIPAL CORPORATIONS—SURFACE WATERS—FLOODING LANDS —TORTS—LIABILITY.

In this State a municipal corporation is liable, as is a private individual, for damages caused by concentrating and pouring surface waters upon the land of another through artificial channels in greater quantities and with greater velocity than would be natural.

3. WITNESSES—ADVERSE WITNESS—DEFENDANT ENTITLED TO BENEFIT OF UNDISPUTED TESTIMONY.

While a plaintiff is not bound by the testimony of an adverse witness called under the statute (3 Comp. Laws 1915, § 12554), but may dispute his testimony, yet such testimony as is undisputed, given upon his examination by defendant's counsel, must be treated as though introduced by defendant from a witness originally called by him, and defendant is entitled to its benefit.

4. MUNICIPAL CORPORATIONS—WATERS AND WATERCOURSES — SURFACE WATERS—DIRECTED VERDICT.

Evidence examined, and *held*, insufficient to make out a case for the jury on the theory that by laying out its streets, paving them, and improving them, defendant city had caused the surface water to flow upon plaintiff's land in excess of its flow in a state of nature.

5. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held*, insufficient to go to the jury upon the theory that defendant city had been negligent in the construction and maintenance of a certain sewer.

On liability of municipal corporation for damming back surface water by grading of street, see notes in 65 L. R. A. 250, and 29 L. R. A. (N. S.) 126.

6. Negligence—Evidence—Sufficiency.

In negligence cases the happening of the accident alone is not proof of negligence, and in order to recover there must be substantial proof of defendant's negligence.

Error to Ionia; Perkins (Willis B.), J., presiding. Submitted January 14, 1920. (Docket No. 86.) Decided April 10, 1920.

Case by Nancy J. Steele against the city of Ionia for damages for an alleged flooding of plaintiff's land. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Hawley & Eldred*, for appellant.

*F. C. Miller* (*R. A. Colwell*, of counsel), for appellee.

Fellows, J. Grand river pursues a somewhat sinuous course through the city of Ionia. It is some distance south of the tracks of both the Grand Trunk and Pere Marquette railroads. Plaintiff is the owner of two pieces of bottom lands denominated in the record the "west piece" and the "east piece." They are some distance apart but of the same general character. The west piece lies between the right of way of the Grand Trunk and the river, and is bounded on the west by Steele street and on the east by lands of one Gresczkowiak. The east piece extends from the Pere Marquette right of way to the river and is bounded on the west by the river and Mill street and on the east by Cleveland street. On both pieces the land at the river bank is higher than it is away from the river and both pieces have a low portion, spoken of by some as a "basin," "bowl," and like terms. Plaintiff's lands were originally purchased by her husband in 1886, but were sold on mortgage foreclosure some time in the nineties and were bid in by her. Mr. Steele has had the management of them since she became the owner. The first street north of the Grand Trunk

station grounds is Fort street; the next east and west street is Main street, the principal business street of the city. North of Main street are hills and bluffs, the testimony tending to show that the rise is quite marked and in some cases abrupt. There are several north and south streets running to or crossing Main and Fort streets and several other east and west streets in the city.

July 17, 1917, an extraordinarily severe storm visited Ionia. Both pieces of plaintiff's low lands along the river had been planted to crops which she claims were damaged or completely destroyed, the crops that were drowned being mostly, if not entirely, those in the depressions or basins to which we have referred. This action is brought against the city of Ionia to recover for such damages, the theory of the plaintiff being that by the improvements which the city has made in its streets—paving them, constructing gutters and other improvements—it has caused the waters of the city to be cast upon her lands as such waters would not be cast in a state of nature and that under such circumstances the city is a trespasser; it is further insisted that the defendant is liable for the negligent construction, maintenance and operation of its Fort street storm sewer. At the close of plaintiff's proofs the trial judge directed a verdict for the city and plaintiff brings the case here.

Plaintiff's counsel assign one error upon the refusal of the court to receive the files in a certain chancery case. The balance of the errors assigned are upon the action of the court in directing a verdict for the defendant and refusing to submit the case to the jury. We shall first consider the ruling of the court refusing to admit the chancery files with a statement of some of the facts leading up to that case.

On or near the line between plaintiff's west piece and the Gresczkowiak land is an old ditch called in

the record and named on the maps "old open drain."
We do not find support in the record for the claim of
plaintiff's counsel that this was at one time a natural
water course, but the record does disclose that it has
existed a great many years. The record likewise dis-
closes that the Grand Trunk Railway Company and
its predecessor maintained for a great many years
and probably from the time the railroad was con-
structed either a wooden culvert or an iron pipe under
its tracks for the purpose of draining off the surface
water on its grounds; at one time it had two such
openings under its track but at the time of this con-
troversy one of these openings had been closed. The
water from the opening or openings went into the old
open drain and also upon the lands of both Grescz-
kowiak and plaintiff. The testimony shows that for
a great many years plaintiff's husband complained to
the officers of the city against the flooding of plain-
tiff's lands and on June 7, 1905, the council of the city
directed the opening of a ditch across "Mr. Steele's
lands" south of the (then) D. & M. depot. The tes-
timony fairly discloses that the parties had the old
open drain in mind and that its cleaning out and deep-
ening was in contemplation. Mr. Gresczkowiak, claim-
ing that such action flooded his lands and brought
down and deposited sewage of the city and created a
nuisance upon them and did him irreparable injury,
filed his bill for an injunction. To this bill the city
made answer and the case went to a hearing upon its
merits resulting in a decree for Mr. Gresczkowiak,
granting an injunction and requiring the city to fill
up the ditch where it had been dug out. It should be
stated for the purpose of completing the facts with
reference to that litigation that after the entry of the
decree in that case the city constructed the Fort street
storm sewer for the purpose of taking care of the
water in that part of the city. In the instant case

plaintiff's counsel offered the files in the Gresczkowiak case, the purpose being to show admissions of defendant made in the answer in that case. The trial judge refused to receive them and error is assigned on this action. A résumé of the pleadings and decree in that case appear in this record. We have examined it and do not find in the answer any admission by the defendant of any fact which the plaintiff has not established upon the record in the instant case by other testimony or anything that would change the conclusion we have reached. Under such circumstances if there was error in this ruling of the trial judge, a question we do not decide, it was without prejudice to the plaintiff.

While defendant urged several grounds for its motion for a directed verdict, and as to certain of them counsel differ as to the applicable legal principles, they do not seem to disagree upon the rule that while one may dispose of the surface waters upon his land he may not concentrate the waters and pour them through artificial ditches in greater quantities and with greater velocity than would be natural, or as sometimes stated, one is entitled to receive the waters as they were wont to flow in their natural state. It also seems to be agreed that in this jurisdiction a municipal corporation is within the rule stated and is liable as is a private individual for casting surface water in violation of such rule. We need, therefore, spend no time in considering authorities upon these questions. What counsel disagree about is whether upon this record the plaintiff has made a case establishing liability on the part of the defendant under the rule which both parties seem to agree upon. In other words, Has the plaintiff by the testimony introduced shown *prima facie* that the defendant has cast water upon her lands to a greater extent than they would have been cast in a state of nature?

A Mr. Girard who had for 19 years been water commissioner of the city, having charge of its waterworks and sewers, was called by plaintiff as an adverse witness under the statute (3 Comp. Laws 1915, § 12554). After plaintiff's counsel had completed his cross-examination, the witness was fully examined by defendant's counsel before the motion for a directed verdict was made and much important testimony was given by him. We do not understand counsel to agree fully as to the force to be given this witness' testimony. It will be sufficient that we say that under the terms of the statute plaintiff was not bound by the testimony of this witness and was at liberty to call such witnesses as she desired to dispute his testimony, but as to such testimony as this witness gave upon his examination by defendant's counsel as is undisputed, it must be treated as though introduced by defendant from a witness originally called by him with the same benefit as though the witness was examined in the first instance by defendant's counsel. In other words, while plaintiff was not bound by anything this witness testified to, and could dispute all testimony given by him, this did not deprive the defendant of the right to examine him as its witness or to the benefit of the testimony given by him upon such examination. Such facts as were testified to by him upon such examination and which are undisputed must be given the same effect as though elicited from a witness originally called by defendant. All of the witnesses except Mr. Girard were of plaintiff's selection.

A careful reading of this ample record (and it has been read a second time to insure that nothing has been overlooked), the undisputed physical facts which we are bound to consider, the maps which show the location of streets and sewers and open drains, all convince us that (1) not only has plaintiff failed to establish that the defendant city cast water upon plain-

tiff's lands in greater quantities than would flow there in a state of nature, but that (2) the physical facts and the testimony affirmatively establish that within the memory of the witnesses who speak on the subject this bottom land of plaintiff has until the putting in of the Fort street sewer always been flooded, and (3) that the physical facts corroborate the testimony of two witnesses that much less water now goes down upon the plaintiff's lands than flowed there in a state of nature and before the city put in a sewer system and thus made provision for the care of surface water.

The levels taken by plaintiff's engineer corroborate the testimony of her witnesses that the natural drainage of the entire watershed was upon and over those bottom lands of which plaintiff's lands form a part. Mr. Steele bought these lands in 1886 and testifies to putting in tile soon after that, but he does, not claim that he made any attempt to cultivate them until 1903, and his complaints to the city about the flooded condition of this bottom land were substantially contemporaneous with his efforts to cultivate them. The testimony of plaintiff's witnesses establish that before the installation of the Fort street sewer the lands of plaintiff and particularly those portions where the crops were destroyed by the rain, of July 17, 1917, were grown up to willows, cattails and quackgrass and there is some testimony from these witnesses that water stood on such lands the entire year. The claim of the plaintiff that the excessive amount of water which came upon her land on this particular occasion in 1917 was due solely to the opening and improving of streets and the installation of gutters along their sides is met by the undisputed fact that these streets, improvements and gutters have existed for many years —25, 30, 40, 50, and even 60 years. During these years the waters from this watershed have come upon plaintiff's east piece through an opening under the

Pere Marquette and upon the west piece through an opening under the Grand Trunk; and during the memory of all the witnesses who speak on the subject both of the pieces have been flooded, at least until the Fort street sewer was built. As applicable to the east piece the map showing the sewer system shows sewers upon the following east and west streets: LaFayette, Washington, Main and Bayard, and upon the following north and south streets: Cleveland, Jefferson and Mill streets, the Mill street sewer being very close to plaintiff's east piece. The two maps submitted on the hearing both show a building erected on plaintiff's east piece upon, and entirely obstructing, an old drain which was evidently used before plaintiff's building stopped such use, to carry off surface water. As applicable to the west piece such map shows sewers on the following east and west streets: LaFayette, Washington, Main and Fort streets, and the following north and south streets: Rich, Kidd, Church alley, Depot street, First, and two alleys. Some of these sewers are open, some are storm sewers and some sanitary sewers. Their waters are taken by the Fort street sewer to the Dexter street sewer from whence they flow into the Grand river some little distance west of plaintiff's west piece. The undisputed testimony shows many catch basins along the route of the covered sewers which gather the surface water not only from the streets named but also from many others, many street crossings having as high as four catch basins, one at each corner.

Upon this testimony and with these physical facts in the case should the court permit the jury to speculate, conjecture and theorize that notwithstanding all the provisions made by the city to take care of the surface water, nevertheless the city by laying out its streets, paving them, and improving them, had caused the surface water to flow upon plaintiff's land in ex-

cess of its flow in a state of nature? We think not. Plaintiff failed to make out a case for the jury upon this theory.

Was there testimony justifying the submission of the case to the jury upon the theory that defendant had been negligent in the construction and maintenance of the Fort street sewer? A witness was called by plaintiff who testified to some experience in constructing sewers and probably qualified himself to testify on the subject. He assumed that the Fort street sewer went into the Dexter street sewer at right angles, and that it curved around the Grand Trunk depot at an acute angle, and based upon such assumption testified that it was faulty construction; but upon cross-examination he testified:

"*Q.* You say you don't know how they came together?

"*A.* Ditch was dug at right angles.

"*Q.* You don't know how they came together or how they were put in?

"*A.* No, not really, I don't."

As against the testimony of this witness, who really did not know how the same was constructed, is the positive testimony of Mr. Girard who put in the sewer that it "doesn't turn at right angles. Sewers are never turned at right angles, turned with a curve," and the map of the city engineer which shows the curve at the station to be as stated by Mr. Girard and as claimed by the defendant. There is some testimony that on occasions some of the gratings of the catch basins became temporarily obstructed by articles coming down with the water in the street but there is no testimony that these conditions were anything but temporary happenings or that the gratings were stopped up long enough so that notice to the city could be presumed. In negligence cases the happening of the accident alone is not proof of negligence and be-

fore the defendant here may be called upon to respond in damages upon the theory that it has been negligent there must be something more substantial in the testimony than appears in this record.

We are persuaded that plaintiff has failed to establish a case under either theory and that the judgment should be affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.