## CITY OF DETROIT v. PORATH.

1. APPEAL AND ERROR—FINDINGS OF JURY—INSTRUCTIONS.

    In action by city against contractors for damages for alleged breach of sewer construction contract, findings made by jury on disputed questions of fact submitted to it under proper instructions may not be disturbed on appeal.

2. CONTRACTS—SEWER CONSTRUCTION—NOMINAL DAMAGES—PROXIMATE CAUSE.

    In action by city against contractors under sewer construction contract for alleged breaches resulting in partial collapse from use of faulty materials and careless workmanship and necessitating large expense to city for repair, verdict for nominal damages *held*, neither grossly inadequate, nor an invalid compromise, nor to entitle plaintiff to new trial, nor inconsistent

with, or against the weight of, the evidence, where city failed to sustain its burden of proof that such breaches as were shown presented necessity for as expensive repairs as were made, or, damaged city, but where it was shown that such damage as did result was due to faulty design of sewer required by contract.

3. SAME — NOMINAL DAMAGES — INSTRUCTIONS—COMPROMISE—EVIDENCE.

Verdict for nominal damages in action of assumpsit by city against contractors who built a sewer *held*, in an amount in accord with instructions of which city may not complain and not an invalid compromise where there is evidence of substantial compliance by defendant contractors with contract requiring construction of sewer with inherently faulty design and city did not sustain its burden of proof that breaches shown resulted in damage to it.

4. TRIAL—EVIDENCE—READING FROM TEXTBOOKS.

Permitting defendant's counsel, over objection, to read from textbooks and reports while cross-examining witness who had given no opinion based thereon is error.

5. EVIDENCE—TEXTBOOKS—CREDIBILITY OF WITNESS.

If witness, on direct examination, bolsters his testimony by referring to standard textbooks and authorities, they may be referred to on cross-examination for the purpose of disputing his testimony, to affect his credibility and to enable the jury to see the book did not contain what the witness ascribed to it.

6. TRIAL—TEXTBOOKS—PREJUDICIAL ERROR—INSTRUCTIONS.

Conceded error in use of textbooks while cross-examining a witness *held*, not prejudicial, where made in good faith and no authorities were presented until subsequent witness was on the stand, whereupon erring counsel consented to court's instruction that jury disregard not only such testimony but all similar testimony of the preceding witness and also stated the correct rule.

7. WITNESSES—EVIDENCE — CROSS-EXAMINATION AS TO REPORT SIGNED BY WITNESS.

In action by city to recover damages from contractors who built sewer which later collapsed, cross-examination of witness with reference to report signed by him as a member of an investigating committee *held*, proper for purpose of explaining, modifying or contradicting testimony already given.

8. EVIDENCE—SURVEYOR'S FIELD NOTES, DRAWINGS AND CHARTS—
ADMISSIBILITY.

Exhibits consisting of surveyor's field notes and drawings and
charts made therefrom *held*, properly admitted upon matter
of line and grade of sewer in action for damages for breach
of contract as to its construction, where data was supplied by
witness and field notes were recorded in a book in his presence
by one not a witness and used in mathematical computations
for other exhibits by another witness.

9. WITNESSES—RELIABILITY OF CONTRACTOR—COLLATERAL AND IR-
RELEVANT ISSUE—TRIAL.

Refusal of court to permit counsel for city in its action of as-
sumpsit against contractors on sewer construction contract to
examine witness, called by defendant for cross-examination un-
der the statute, as to reliability and trustworthiness of the con-
tractors, *held*, correct, since it was a controverted, collateral
and irrelevant matter (3 Comp. Laws 1929, § 14220).

10. SAME—CROSS-EXAMINATION—SUPERINTENDENT—IMPEACHMENT.

Cross-examination of defendant sewer contractors' superintend-
ent in charge of construction in action by city for damages for
partial collapse *held*, not unduly restricted because limited by
court upon matters which had been fully covered and which
were not material to issues presented where plaintiff's counsel
was not limited in exhibiting improbabilities of the witness'
story and made no attempt to show conduct or statements in-
consistent with his testimony nor to lay foundation for subse-
quent direct impeachment.

11. TRIAL—EVIDENCE—IRRELEVANT EXHIBIT—REJECTION BY COURT
ON OWN MOTION.

Picture of bulkhead in a large sewer in a section not constructed
by contractors sued for partial collapse of another section *held*,
properly rejected as irrelevant by court on its own motion.

12. EVIDENCE—OPINION OF EXPERTS—SEWER DESIGN—QUALIFICA-
TIONS.

Opinion as to propriety of design of sewer for character of soil
through which it was built, rendered by graduate civil engineer
who had been engaged in the construction of sewers and other
underground works for many years, but who admitted never
having designed a sewer, and submitted to jury under instruc-
tions leaving its weight for their consideration *held*, not error.

13. CONTRACTS—CONSTRUCTION BY COURT AS MATTER OF LAW.
   The question of construction of clear and unambiguous terms of a contract is one of law for the court.

14. SAME—CONSTRUCTION OF NOTE ON SEWER DESIGN—QUESTION OF FACT.
   Construction of a note as to cost of using air and tunnel liner plates on design for sewer built through soil containing quicksand which note the trial court was unable to interpret as a legal proposition *held*, subject to explanation by witness who had had extensive experience in sewer construction where quicksand was involved, and was properly submitted as a question of fact for determination by jury.

15. TRIAL—INSTRUCTIONS—NOMINAL DAMAGES.
   Instruction that jury might return a verdict for nominal damages in action of assumpsit by city against sewer construction contractors for damages for partial collapse of sewer *held*, not reversible error where plaintiff had included a request to charge that jury could allow damages in some sum between one cent and amount claimed by plaintiff.

16. SAME—REQUESTS TO CHARGE—RESULTING DAMAGES.
   In action by city against sewer construction contractors for partial collapse of sewer, refusal of plaintiff's request to charge that because defendants built a flat bottom sewer instead of circular type and used thin steel reinforced walls instead of thick concrete as required by contract they must be held for damages resulting to plaintiff *held*, properly refused, where plaintiff failed to show such departure from plans as was made resulted in damage to it while it subjected defendants to liability for all damages whether resulting from particular defects complained of or not, and plaintiff's inspectors had approved the modifications which were accepted and paid for.

17. MUNICIPAL CORPORATIONS—SEWER INSPECTORS—REPORTS.
   Reports as to changes in plans and specifications of sewer made by contractors to inspectors representing commissioner of public works and employed by him *held*, binding upon city as reports to commissioner required by contract in action under which city sought recovery from contractors for partial collapse.

18. TRIAL—REQUESTS TO CHARGE.
   Request to charge that defendant sewer contractors failed to make report to commissioner of public works of errors and

omissions in sewer plans and specifications as required by contract and in failing to do so breached contract *held*, fairly covered by charge as given, the evidence showing city acted through the commissioner and inspectors employed by him.

19. SAME — METHOD OF CONSTRUCTION — IMMATERIAL ISSUE — SUBSTANTIAL PERFORMANCE.

Trial court committed no error in refusing to give request to charge as to method pursued in constructing sewer where such matter was not in issue and material portions of request were covered by charge as given, where defendant contractors constructed sewer substantially in accordance with governing provisions of contract, plans and specifications.

20. WITNESSES—OPPOSITE PARTY—PURPOSE OF STATUTE.

The purpose of the statute permitting either party to call the opposite party or his agent is to do away with a technical rule of evidence and facilitate getting at the facts so as to try the case on its merits and have the same benefit of the other's testimony as though witnesses in their own behalf (3 Comp. Laws 1929, § 14220).

21. SAME—TESTIMONY OF OPPOSITE PARTY—PRINCIPAL AND AGENT.

Testimony elicited on cross-examination of an agent of the opposite party, called under the statute, stands in no different position than it would if the adversary of party calling the witness had called the witness since the statute makes such agent subject to cross-examination by the opposite party without qualification although it does not give the right to make such witnesses the witnesses of the adversary of the party calling them (3 Comp. Laws 1929, § 14220).

22. SAME—CONTRADICTION OF TESTIMONY OF OPPOSITE PARTY.

One calling opposite party, or his agent, as witness for cross-examination under statute is not bound by, and may contradict, the testimony elicited the same as if he were the witness of the opposite party (3 Comp. Laws 1929, § 14220).

23. SAME—TESTIMONY OF OPPOSITE PARTY—EFFECT.

While testimony of adverse witness called under the statute may be contradicted or overcome by other testimony, it is in the case and its effect cannot be destroyed by mere assertion nor may it be eliminated because called out on cross-examination (3 Comp. Laws 1929, § 14220).

24. SAME—STATEMENTS OF EMPLOYEE OF OPPOSITE PARTY BINDING
ON EMPLOYER.

Refusal to give request to charge that an agent or employee of
opposite party called for cross-examination under the statute
does not bind his employer by statements made on the stand
*held,* proper and to have given it would have been error (3
Comp. 1929, § 14220).

25. TRIAL—DAMAGES—REQUESTS TO CHARGE.

In action to recover damages for breach of contract as to sewer
construction, refusal to give request to charge in which various
items of damage claimed were specifically enumerated may not
be complained of where plaintiff proffered request that jury
might allow any amount from one cent up to full amount
claimed by plaintiff and jury awarded verdict for nominal
damages.

26. APPEAL AND ERROR—CONTENTIONS OF APPELLEE.

It is unnecessary to consider contentions of defendant who did
not appeal where appellant has shown no reversible error.

Appeal from Wayne; Moll (Lester S.), J. Sub-
mitted January 24, 1935. (Docket No. 120, Calendar
No. 37,939.) Decided April 8, 1935.

Assumpsit by City of Detroit, a municipal corpo-
ration, against Julius Porath and Edward W. Por-
ath, doing business as Julius Porath & Son, con-
tractors, and Southern Surety Company and others,
sureties, for damages for alleged breach of sewer
construction contract. From nominal verdict and
judgment for plaintiff, it appeals. Affirmed.

*Raymond J. Kelly, Clarence E. Page* and *Walter
E. Vashak,* for plaintiff.

*Ernest P. LaJoie,* for defendants Porath.

POTTER, C. J. Plaintiff brought suit against de-
fendant contractors doing business as Julius Porath
& Son, and the sureties upon their bond, to recover

damages arising out of an alleged breach of a contract entered into by defendant contractors with plaintiff for the construction of section one of the Mill road and Southfield sewer, from River Rouge to Ford road, approximately 8,000 feet in length, by defendant contractors for $690,762.50. The contract was entered into November 3, 1926, and the sewer completed and accepted about one year and nine months later. In February, 1930, a part of this sewer failed, at a point approximately 1,800 to 2,000 feet south of Ford road. Later, another part of it near Ford road collapsed. This resulted in an investigation of the sewer by plaintiff which employed the so-called Wrentmore commission to determine the cause or causes of the failure, and to plan and supervise the work of reconstruction. The sewer was repaired and the collapsed portions rebuilt by the city under contract with one Healy, for which plaintiff claims $355,411.61 for repairs, including investigation services, labor and material, and other damages arising from the original defective construction of the sewer contrary to the contract, not included in the part of the same which collapsed, the gross amount claimed upon the trial being $355,-411.61, made up of:

| | |
|---|---|
| Cleaning sewer barrel, 0-00 to 80-32.5 | $ 32,012.63 |
| Uncovering sewer, break No. 2 | 10,066.28 |
| Calking sewer | 20,665.13 |
| Sewer repair, concrete, Sta. 0-0 to 1-00 | 20,814.18 |
| Sewer repair, concrete, Sta. 28-49 to 37-65 | 11,950.32 |
| Driving sheeting | 19,579.39 |
| Pumping | 35,957.93 |

Miscellaneous material ............$  3,065.75
Cost of relining 2,856 ft. at $50..... 142,800.00
Cost of reconstructing in tunnel
      Sta. 61-40 to 63-66,   226   ft.
      Sta. 78-82 to 80-32.5, 150.5 ft.

               376.5 ft.     58,500.00

        Total.................$355,411.61

After the sewer was repaired and the collapsed portions thereof rebuilt, plaintiff instituted suit to recover what it claimed to be its damages, alleging the original contract with defendant contractors had not been carried out:

1—That inferior material and improper mixing of concrete had been used, resulting in poor concrete, which caused collapse of the sewer;

2—There had been faulty workmanship and negligent, careless and improper mixing and placing of concrete by defendant contractors, resulting in a compressive strength lower than required by the contract, plans and specifications;

3—The faulty workmanship and negligent, careless and improper mixing and placing of concrete for construction of the sewer had resulted in its walls being thinner than was required by contract; and the reduction in thickness of the walls of the sewer weakened the structure so as to cause collapse and complete failure of the sewer to carry the sewage and storm water for which it was constructed;

4—The faulty workmanship and negligent, careless and improper precautions taken by defendant contractors for obtaining sufficient bond in the joints of the concrete and adequate keys at con-

struction joints resulted in the sewer being insecurely connected together;

5—The failure to use steel tunnel liner plates at points where soil conditions were such as to make their use necessary to properly place the concrete caused the sewer to collapse and become useless;

6—The faulty workmanship and negligent, careless and improper placing of the steel tunnel liner plates by defendant contractors caused the sewer to collapse and become useless for the purposes for which it was constructed under the plans and specifications of the contract;

7—The faulty workmanship and negligent, careless and improper mixing and placing of concrete by contracting defendants resulted in porous concrete which permitted infiltration of ground water and quicksand into the barrel of the sewer, with a consequent displacement of the foundation of the sewer which caused it to collapse;

8—With the movement and displacement of the foundation of the sewer, the structure, already weak by reason of inferior concrete and thin walls, developed large cracks through which water and quicksand percolated, and the collapse and failure of the sewer became progressive;

9—The faulty workmanship and inadequate and improper control and management of the construction methods used in building the sewer by contracting defendants resulted in improper alignment of the walls and irregular grade of the sewer which materially reduced the capacity of the sewer and rendered it useless to the city;

10—Defendant contractors neglected to and did not construct the sewer in accordance with the provisions of the contract, plans and specifications; the work was not done in a thorough and workmanlike

manner; plaintiff, when it made monthly payments and when it made final payment to defendants, had no knowledge of the defective material and faulty workmanship in the sewer and no knowledge it was not constructed in accordance with the terms of the contract, plans and specifications;

11—The contracting defendants, their agents, servants and employees, by fraud and collusion, obtained monthly payments and final payment on the contract from plaintiff, although knowing at the time the sewer was not constructed in accordance with the terms of the contract, plans and specifications and was defective;

12—The contracting defendants represented to plaintiff the sewer was constructed in accordance with the terms of the contract, plans and specifications;

13—Contracting defendants, in order to conceal faulty construction and defects and failure to comply with the terms of the contract, plans and specifications, carried on the work of construction so as to conceal such facts from plaintiff;

14—At numerous places in the sewer, defective concrete was concealed by being plastered over with cement mortar, and by reason of the failure of defendant contractors to construct the sewer in accordance with the contract, plans and specifications, and its faulty method of construction, it collapsed and became defective, dangerous and unsafe, and wholly unfit for the purposes for which it was constructed.

All of these claims upon the part of plaintiff were denied in the several answers filed.

The contract provided the commissioner of public works of the city should issue monthly certificates showing the estimated amount due the contractor,

and that the city should audit and allow the amount certified by the commissioner of public works and pay the same to the contractor as partial payments under the contract; that after satisfactory completion of the work, the commissioner of public works would make final inspection of all the work, make up a final estimate of the amount to be paid the contractor under the contract, and after the common council had approved the final estimate of work completed, it should be paid to the contractor, less the amount paid under the monthly certificates; the materials used and work done should at all stages be subject to inspection by the commissioner of public works, who was made the sole judge of the amount, quality, acceptability and fitness of the sewer walls and of the several kinds of work and materials to be paid for under the contract; but, the contract provided such inspection by the commissioner of public works should not relieve the contractor from any obligation to furnish material and perform the work strictly in accordance with the contract, plans and specifications, and if any materials or workmanship were discovered to be defective prior to final acceptance of the work, it should be removed and made good by the contractors.

Upon trial before a jury, plaintiff recovered a verdict in the sum of six cents, and brings this case here by appeal in the nature of writ of error.

Plaintiff here claims the sewer walls were thin; the concrete improperly mixed, was of low compressive strength, porous; the work done in a careless and unworkmanlike manner; the sewer barrel was not round as provided in the contract; the contractor assumed liability which might result from the removing of the inner forms used in the con-

struction of the sewer barrel 24 hours after pouring the concrete, which resulted in improper workmanship; the construction joints between the different parts of the sewer were not bonded and keyed properly; it was necessary for the city to replace the thin walls, porous cement, to stop infiltration by calking, reconstruction and relining of the sewer barrel, to provide a sewer as contemplated by the terms of the contract; and defendants are liable for the expense so occasioned.

Plaintiff's contentions here made may be summarized:

1—Plaintiff was entitled to recover actual damages, and the trial court was in error in permitting the jury to award nominal damages only;

2—The verdict rendered by the jury was a compromise verdict, and not a true verdict of the jury based upon the law and the evidence;

3—It was the duty of the trial court after verdict and judgment to grant a new trial, for the reason plaintiff claimed it was entitled to actual compensatory damages instead of nominal damages; and the verdict for nominal damages rendered was invalid for the reason it was a compromise verdict.

Defendants contend that under the contract the city had the power to make day-to-day inspection, and the power of final acceptance; that it did make such day-to-day inspection and exercised its power of final acceptance, approved the construction of the sewer and paid therefor, and, in the absence of fraud or collusion, such inspection and final acceptance estops the city from maintaining this suit; that the design of the sewer and the engineering with respect to the grade and line thereof contributed to the failure of the sewer; that these were furnished and established by the city, and it is now

estopped from claiming damages, such design and engineering with respect to line and grade having contributed to the failure of the sewer; that in replacing the parts of the sewer which collapsed and in repairing the structure, the city departed from the original plans and specifications and reconstructed a sewer of a different kind, character and quality, and according to different plans and specifications than those furnished defendant contractors, and according to which the sewer was constructed; and, in any event, plaintiff may not now collect from the defendant contractors any more than would have been necessary for the city to have expended to reconstruct the sewer in accordance with the plans and specifications which were the basis of defendant contractors' contract.

Many of the questions here raised were disputed questions of fact and, insofar as these were properly submitted to the jury by the trial court and were passed upon under an appropriate charge, such determination and finding of facts by the jury may not be disturbed by this court.

1. Plaintiff contends the verdict of six cents was grossly inadequate; against the great weight of the evidence; a compromise verdict; and a new trial should have been granted. Under this head, plaintiff marshaled the alleged facts to show the walls of the sewer were thinner than required by the contract; the concrete was improperly mixed, and was porous; the work was done in a careless and unworkmanlike manner; the sewer was not circular as required by the contract; the contractors especially assumed all liability arising from the city consenting to the removal of the inner forms used in the construction of the sewer 24 hours after the cement was poured; the joints were not properly bonded;

and the city was compelled to expend $355,411.61 to rebuild and repair the same after its partial collapse; and hence, the city was entitled to a verdict in excess of six cents.

There was testimony offered of the thinness of the walls; of porosity of concrete; of low compressive strength of concrete; of water percolating into the sewer; of its collapse, repair, and the cost thereof. But, there was testimony this thinness of the walls did not cause the collapse of the sewer, and the city was not damaged thereby; nor did the porosity or low compressive strength of the concrete in any way cause or contribute to the collapse of the sewer, or any part of it; the contract did not require a water-tight sewer to be constructed; the collapse of the sewer was due to inherent defects in the plan provided by the city; the repairs made were not in accordance with the original plans and specifications, but in accordance with different plans and specifications, which resulted in greatly increased cost of rebuilding and repair, so that many, if not all, of the facts claimed by plaintiff to authorize a substantial verdict were in direct dispute, and their determination was for the jury.

After the verdict was rendered and judgment entered, plaintiff made a motion for new trial, in which practically all of these questions were raised, which motion was exhaustively argued and given careful attention by the trial court. In disposing of it, the trial court said:

"This court is not prepared to say that the verdict as rendered was against the great weight of the evidence, or even that it was inconsistent with the evidence. Evidence as to the actual manner of construction and condition of the sewer barrel after the failures was in serious dispute, as was the ques-

tion of necessity for the various repairs undertaken and the reasonable cost thereof. It should be noted that breach of contract in several particulars is alleged. There was no testimony of inferior materials and improper mixing of concrete so this claim on behalf of the city was withdrawn from the consideration of the jury. There was the claim of low compressive strength under the requirements of the contract; that faulty workmanship and improper mixing and placing of concrete resulted in thin walls; that improper construction joints were constructed; that the failure to use steel tunnel liner plates caused the sewer to collapse; that the improper and careless placing of steel tunnel liner plates caused the sewer to collapse; that the faulty workmanship of the contractor resulted in a porous concrete; that the faulty workmanship of the contractor resulted in the improper alignment of the walls and irregular grade of the sewer which materially reduced its capacity. * * *

"All of the testimony on these various claims of breach of contract were in dispute. It must be assumed that the jury determined that the contract had been breached. In what respect the breach occurred is not disclosed, nor can it be determined whether if a particular breach was found to have occurred the jury determined that there was any necessity for repairs in such particulars. With reference to low compressive strength, for example, it was admitted by the contractor that samples of concrete procured by the city disclosed a compressive strength less than required by the contract. It would have been quite proper, therefore, for the jury to conclude that a breach of contract had occurred in this particular, without concluding, however, that the city was damaged thereby, or that there was presented the necessity of repairing the barrel because of such failure of compliance with the contract. The testimony disclosed no particularly obvious connection between the concrete of

low compressive strength and any particular failure of the sewer. Neither did the testimony disclose such connection between any failure and the thinness of the concrete in any particular location, or the porosity of the concrete, or the failure to line. In other words the whole controversy in dispute centered around the question of substantial performance of the contract and whether the actual failures of the sewer at the points where the barrel collapsed was the result of faulty workmanship or the use of faulty material attributable to the contractor, or the result of faulty design attributable to the city. This court is of the opinion that it would be an unjustifiable invasion of the province of the jury to say that as a legal proposition the verdict was contrary to the great weight of the evidence."

Upon the question of nominal damages the trial court said:

"The position of counsel for plaintiff would be more tenable if the testimony with respect to any alleged breach and the necessity and causes of repair resulting from such breach was uncontradicted. The burden of proof is upon the city to show that a breach occurred in some particular alleged by reason of the failure of the contractor to substantially perform, that by reason of such breach a necessity to repair or reconstruct the sewer barrel was occasioned, and the reasonable cost thereof. Unless some such logical sequence were followed the testimony would naturally be confusing. Assume again for instance concrete of low compressive strength, or thin or porous concrete not in substantial compliance with the contract, we may then inquire as to the result, and the question of what, if any, damage accrued to the city by reason thereof, whether there was any testimony in such regard, etc. To my mind the jury may very logically have concluded that here and there throughout the sewer

barrel there was porous concrete, or concrete less than sixteen inches in thickness, or concrete having a compressive strength less than required by the contract, and that such defects though a departure from the contract had no effect on the strength or usefulness of the barrel, that same had not been repaired, or that if such defects had been repaired there was no necessity therefor. Would such reasoning necessarily be an abuse of the discretion of the jury? In my opinion it would not. Nor am I of the opinion that the verdict of the jury was necessarily a departure from the charge of the court in respect to damages.''

An examination of the record shows many requests to charge were preferred by plaintiff, and plaintiff's twenty-fifth request to charge was:

''Now I charge you that the first question for you to determine is whether or not there was a breach of contract by the defendants in any of the particulars I have heretofore mentioned. If you find that there was a breach then the next question for you to determine would be the amount which you will allow, if any, and this amount will be such as you will agree upon according to the evidence introduced in this case. It will be impossible for you to arrive at the amount if you have occasion to estimate it with mathematical accuracy. Simply do the best you can according to all the evidence that has been introduced and allow some sum anywhere from one cent up to the full amount claimed by the plaintiff, if you allow anything.''

After this request to charge by plaintiff, we do not find any error in the charge of the trial court in submitting the question of damages, nor do we think, after a careful consideration of the facts, there is any evidence before this court the verdict of the jury was such a compromise as to be invalid.

2.   Plaintiff claims the trial court was in error in permitting defendants' counsel over objection, in the cross-examination of witnesses, to read from textbooks and reports where the witness had given no opinion or testimony based on such textbooks and reports. It may be conceded at the outset this testimony was inadmissible. *People* v. *Hall,* 48 Mich. 482 (42 Am. Rep. 477); *Hall* v. *Murdock,* 114 Mich. 233; *Foley* v. *Railway Co.,* 157 Mich. 67.

Where a witness on direct examination seeks to bolster up his testimony by referring to the standard textbooks and authorities, then such textbooks and authorities which are referred to by the witness to bolster up his testimony may be produced and introduced for the purpose of disputing the testimony of the witness, to affect his credibility, and to enable the jury to see the book did not contain what the witness ascribed to it. *Pinney* v. *Cahill,* 48 Mich. 584.

It is conceded counsel for defendants violated this rule. But it is contended there is no reversible error under the circumstances. While one of plaintiff's witnesses who claimed to be an expert in sewer construction was on the stand, counsel for defendants sought on cross-examination to ask him about Metcalf and Eddy on American Sewage Practice, and this was objected to, and apparently there was some discussion and the opinions of this court were referred to. After counsel for plaintiff had discussed the authorities, the court said: "I am with you unless the defense can show some authority that will permit the reading of a passage from a book, either for the purpose of cross-examination or direct examination," and sustained the contention of plaintiff's counsel. Apparently, before this,

similar testimony had been admitted because counsel for plaintiff asked that that testimony be read and stricken from the record. Whereupon, defendants' counsel consented that all reference to Metcalf and Eddy be stricken. Whereupon, the court struck out the other questions asked by counsel for defendants of the witness Morse. Plaintiff's counsel then said:

"The reason I called your honor's attention, I felt in justice to your honor, after finding this case, it was not my thought of getting a reversal; I think some lawyers might have stood by; I want to do the right thing; the only thing I want the jury to know it is done."

There was further discussion. The jury was out of the court room, and after it returned, the trial court said:

"We met with a situation just before court adjourned for the noon recess that has to do with the examination of a witness by the use of a textbook, claimed to be an authority with reference to sewer construction. The same method was resorted to in the examination of another witness, and it was objected to by Mr. Page. Now, I am going, at this time, to lay down the rule that the only circumstances under which textbooks can be read in evidence are where the witness has based his opinions or his conclusions partially or wholly upon the contents of such textbooks and has referred to them as an authority, or in whole or in part as a basis for his expression of opinion. And textbooks may not be read, even on cross-examination, or excerpts from the text may not be read in the examination of a witness to convey any force to what may therein be stated; that is, a textbook or a reading of an excerpt from a textbook embodied in the question or referred to, may not be considered as substantive

proof. In other words, the law does not permit the reading of the text or a reference to an authority, by the reading of an excerpt from such authority, to stand in place of substantive proof. It does permit, however, the use of such a text where it is claimed by the witness under examination, under cross-examination, that his opinion is based wholly or partially on such authority for the purpose of discrediting the witness, I should say, in view of impeaching the statement of the witness. In view of that ruling, I have stricken from the record those questions put by counsel for the defense to the former witness, that was, Mr. Morse, Mr. Floyd Morse, where the questions were based on the reading from the text, and I instruct you to disregard, as testimony in this case such excerpts or the questions that were based on the reading from the textbook. Now, I think that covers the situation.''

The record indicates counsel for defendants asked these questions in good faith and, though they were objected to by counsel for plaintiff, no authority was presented the court until the second witness was on the stand when the question arose and by consent of counsel, after a discussion of the authorities, in the absence of the jury, it was consented that this testimony be all stricken out, and it was stricken out at the request of counsel and by consent, in the presence of the jury, and the correct rule stated.

Under the circumstances, we think no prejudicial error resulted.

3. Plaintiff contends the court erred in permitting defendants' counsel to cross-examine the witness Ruhling with reference to the report of the so-called Wrentmore committee. It appears that Ruhling had signed the report of the Wrentmore committee, and when he took the stand and testified,

it was proper to cross-examine him in relation to the report of the Wrentmore committee for the purpose of explaining, modifying or contradicting the testimony he gave upon the witness stand.

4. It is contended the trial court erred in admitting in evidence exhibit 194, which was the field notes of one Sinclair, in the handwriting of Sinclair, covering the survey of the line and grade of the Southfield sewer, without placing Sinclair on the stand and identifying the notes; and in admitting exhibits 194, D and E, which were drawings or charts prepared from these notes. Sinclair was employed by the city engineer's office as head of a surveying party to check up on the line and grade of this sewer after a part of it had collapsed. He had working with him as an instrument man William R. Downey, who made the measurements with his instrument and tape and called off his measurements to Sinclair, who inserted these measurements or data in a book. This data so gathered was turned over to witness Palmer, another employee of the department of public works of plaintiff, who prepared a graph based thereon which constituted an exhibit. The testimony indicated Downey was the person who made the actual determination as to the line and grade by reason of the instrument; that he and Sinclair were working together; that he gave the data indicated by the instrument to Sinclair, and Sinclair, in his presence, entered it in the book. Downey did not make any computations. He only ascertained the facts which were communicated to and recorded by Sinclair. The record indicates counsel for defendants offered in evidence the data which was supplied by Downey and recorded by Sinclair, and nothing else, and counsel for plaintiff said upon its being offered:

"I have no objection to the introduction of that portion of the notes."

Error may not be predicated upon the introduction in evidence of this fundamental data and, with that data in the case, the exhibits 194, D and E, were merely the result of mathematical computations based upon the same.

5.   Plaintiff's counsel contends he was improperly prevented by the trial court from cross-examining the witness Fellows as to the basis of the statement he made upon direct examination with reference to the reliability and trustworthiness of the contractor, both on the oral evidence and exhibit 197 introduced in evidence by defendants. Fellows was employed by the city at the time he testified as manager of the city airport.   He had been city engineer of the city from June 1, 1925, until January 22, 1931.   The sewer was constructed by the city during the time Fellows was city engineer.   Fellows was sworn as a witness for defendants, having been called under the statute for the purpose of cross-examination.*   He was examined at considerable length.   This witness testified on cross-examination by counsel for defendants that at his trial before the civil service commission he gave it as his opinion the pumping operations at Kirkwood avenue, followed by the failure in section two of the sewer in question, gave an outlet to the sand around the barrel where the breaks occurred in section one.   This testimony tended to support the contention of defendants.   It was at Fellows' suggestion a committee was appointed to ascertain the causes of the breaks in the sewer, and such an investigating committee was formed, consisting of

---

* 3 Comp. Laws 1929, § 14220.—REPORTER.

Ruhling, Mr. Wrentmore and Mr. Smith. This committee was appointed by the common council and made a report; and the witness also, as city engineer, issued a statement to the press which he testified was at the time it was made regarded by him as an honest statement in relation to the matter. The witness testified to the employment of inspectors by the city, who were on the job and approved from time to time the work performed so the defendant contractors obtain pay based upon these estimates. On re-direct examination by counsel for plaintiff, the witness was asked about the statement which he had made on direct examination that the contractor was a trustworthy and competent contractor "despite the trouble he had had." Counsel asked him what trouble he was referring to, and the witness said he was referring to the case generally known as "the paving barons' proposition." He was then asked about the proposition to which he referred, whereupon counsel for defendants objected that it was improper, although counsel for defendants said, "But so far as the jury is concerned now, we might as well have the whole story," apparently consenting thereto; but the trial court held the whole business was improper, and in this holding we think the trial court was correct. It involved a collateral matter, the facts of which were apparently in dispute, had no relevancy to the issue being tried, and the court was justified in refusing to go into a controverted collateral matter not involved in the case on trial.

6. Plaintiff's counsel claims he was unduly restricted in the cross-examination of the witness Carpenter who was called for defendants and whose direct examination covered 97 pages of the record and his cross-examination 14 pages, and who was

later recalled and whose further examination covered 20 pages and whose cross-examination covered 12 pages. Carpenter was superintendent of sewer construction of defendants at the time the sewer in question was built. He had been engaged in sewer construction since 1892, and had built sewers in Grand Rapids, Detroit, Cleveland, Port Huron, Davenport, Rock Island, Louisville, Milwaukee and elsewhere. He testified as to the character of the earth through which the sewer ran; the method of construction used; the supervision of the city; the use of forms and supports, and the method of determining whether the bore for the sewer was round; the movement of the forms; the possibility of the walls being thicker in some places than others; and other things relating to the actual work of excavating the soil and building the sewer. Among other things, he testified to the method of use of a sweep stake from a center fixed by the sewer inspector, and turning clockwise and marking the outer diameter of the proposed bore of the sewer so as to make the excavation therefor round. He was examined and cross-examined in relation to the use of this so-called sweep stake, and the trial court said during the cross-examination of the witness:

"Let us get it clear, and then get on to something else."

And at other times, the trial court manifested some impatience with counsel for plaintiff in relation to what the trial court apparently regarded as a repetition of questions and testimony. Counsel for plaintiff says he was cross-examining the witness for the purposes of impeachment, but there is nothing in the examination or cross-examination to indicate knowledge of this purpose was conveyed to

the trial court. Counsel for plaintiff was entitled to fully cross-examine the witness in relation to all of the things testified to by him on his direct examination and as to any and all matters which might be relevant or material to the issue involved.

"The credit of a witness may be impeached in various modes: By exhibiting the improbabilities of his story on cross-examination, or showing conduct inconsistent therewith; by showing statements made by the witness inconsistent with his testimony; and by testimony affecting his character for veracity." *Michigan Pipe Co.* v. *North British & Mercantile Ins. Co.*, 97 Mich. 493.

But there was nothing in the statements made by the trial court which in any way limited the right of plaintiff's counsel on cross-examination to exhibit the improbabilities of the witness' story; and no attempt by counsel to show conduct upon the part of the witness inconsistent with his testimony; or to show contradictory statements by the witness; nor was there any attempt to lay the foundation for subsequent direct impeachment. The scope and extent of cross-examination on collateral and immaterial matters is in the discretion of the trial court, and we think the trial court's discretion was not abused in limiting cross-examination upon matters which had been fully covered and which were not material to the issues involved.

7. Plaintiff claims the trial court was in error in rejecting on its own motion plaintiff's exhibit 203. Exhibit 203 was a picture of a bulkhead in section two of the Southfield sewer. It is not claimed it was a picture of anything that formed any part of the sewer the defendant contractors built. It, therefore, was entirely irrelevant, had nothing to do with

the issue involved, it being entirely immaterial what the looks of any bulkhead which was not involved in the contract in question may have been.

8.   Plaintiff's counsel claims the trial court erred in allowing the witness Spencer to express an opinion on the propriety of the design of the sewer because he was not qualified to express an opinion.

Frederick B. Spencer, the witness whose testimony is complained of, was a resident of Detroit; a civil engineer and contractor; a graduate from the literary department of Columbia University in 1911; and a graduate civil engineer in 1913.  He had been engaged in the practice of engineering and had been with the New York Subway Construction for five years, with the Underpinning & Foundation Company, with Smith, Hayward & McIsaacs as a civil engineer in charge of underground work; had had two years' experience in sewer construction; had been in charge of design and reinforcing concrete on a depot wharf in New Orleans; had been with Lakewood, Green & Company in the construction of concrete factory buildings for two years; and was at the time of testifying president of Spencer & Reese, Inc., whose principal business was underground construction work, foundations of big buildings and public work.  He had looked after some sewer work in the city of Detroit, the Connors creek pumping station and the sewers leading to it; had been in the sewer construction business in Philadelphia; had built 11 miles of sewers in Chicago; had been engaged in foundation work in Cleveland, and in Detroit where he had laid the foundation of the Book-Cadillac Hotel, the Eaton Tower, the Barlum Tower, the Fox Theatre and other buildings.  The witness testified he had never

designed a sewer; but he did testify he had been engaged in the construction of sewers and in underground construction generally and knew something about the character of the soil through which the sewer in question was built and what was necessary to properly protect underground construction, and the kind of sewer necessary to be used through soil of the kind and character of that through which the sewer in question ran. He was asked whether or not the designer of a sewer should know the type of soil through which the sewer was going to be built and design the sewer accordingly, and he answered yes. Plaintiff contends he had no right to answer and it was error to permit him to do so. The trial court permitted him to answer, leaving the weight of his testimony for consideration by the jury, and we think under the circumstances it was not error to do so.

9. Plaintiff contends it was improper to permit witness Barnes to construe a provision of the contract which was clear and unambiguous. There is no question but that if the terms of a contract are clear and unambiguous, the question of construction is one of law for the court. But it is contended the testimony of the witness was, under the circumstances, competent; and though it was not competent, it was not prejudicial to permit the witness to answer.

The witness had had extensive experience in sewer construction where quicksand was involved. After a lengthy examination, there was placed before him for construction a note on the design for the sewer, as follows:

"The unit price of this sewer is to include the cost of using air, tunnel liner plates, or any other

devices which may be necessary to fully complete
this sewer at no extra cost to the city."

This question was objected to by counsel for plaintiff, who said:

"So far as a question of this contract is concerned, it might be competent, but as to how it was
used in connection with other contracts, is immaterial."

The trial court said of this clause:

"If it is a question of fact, it has got to be interpreted in the light of ordinary engineering experience.  Now, if you are right in your contention
that what is meant by that clause in the contract
becomes a question of fact, then it has to be interpreted as a question of fact in the light of ordinary engineering practice or usage.  If it is not
a question of fact, then it is up to the court to interpret or construe it as a matter of law.  * * * I
am sure that I do not know what it means as a legal
proposition * * * and I have already indicated to
you that I am going to submit it to the jury as a
question of fact."

Other objections were made to the question, and
the court indicated he would permit the witness to
answer subject to the objections made thereto, the
trial court indicating that he might charge the jury
in relation thereto or strike out the testimony.  The
answer of the witness was:

"My construction of that would be it was left to
the discretion of the contractor, and I would not,
necessarily, construe to mean the liner plates were
to be left in place after using them, providing he
had some way of getting them out.  You could, I
think, by the terms of that note put the liner plates
in before you concrete, in advance of your construction as a shield.  I do not gather from that it was
compulsory for the contractor to use a complete wall

of liner plates made of steel through this entire sewer. I think if the designer wanted it, it is only fair to the contractor there to say, if it is used it shall be paid for, and describe what he should use.''

Defendant contractors were to build the sewer in accordance with the contract, design, plans and specifications. The plans and specifications did not say that this was to be a steel lined sewer. Apparently, when construed together, the contract provided if it was necessary for the defendant contractors to use air to hold back the quicksand and steel liner plates, the contractor should use them.

Under the circumstances, there was no error in permitting this question to be answered, and the meaning of this note was a question of fact for the determination of the jury when considered in connection with all the other terms embodied in the contract, plans and specifications.

10. Plaintiff contends the trial court was in error in instructing the jury they could bring in a nominal verdict of six cents. This assignment of error has already been referred to and plaintiff may not claim reversal by reason of this part of the charge when in its request number 25 it asked the trial court to instruct the jury to consider the testimony and allow as damages some sum between one cent and the amount claimed by plaintiff.

11. The plaintiff requested the court to charge the jury:

''That the undisputed testimony in this case shows that the contractor deviated from the plans and specifications without proper authorization from the plaintiff city, by making the bottom of the barrel flat instead of circular as designed; by substituting thin walls containing steel bars in place of 16-inch concrete as required—your verdict must be for the plaintiff for the damages resulting to the plaintiff.''

Plaintiff was seeking to recover damages in the sum of $355,411.61 occasioned by the failure of the defendant contractors to construct the sewer in accordance with the contract, plans and specifications, by reason of which it collapsed, and plaintiff was compelled to repair and rebuild the same. No cost of repair or rebuilding the sewer is shown to have resulted to plaintiff by reason of the defects complained of in this request to charge. That is, plaintiff showed no damages resulting from the failure of the defendant contractors to build the sewer precisely in accordance with the contract, so far as the things mentioned in this request are concerned. It is true the defendant contractors built the sewer through part of the quicksand with a flat bottom instead of with a round barrel, and this was the plan which was subsequently adopted by the city in repairing the sewer after it had collapsed. Apparently, this plan was better adapted for the construction and maintenance of the sewer through the kind of soil through which it was built than that originally adopted by the city and embodied in the contract with plaintiff. Whatever deviation was made in the character of the sewer barrel is alleged by defendants to have been made in order to build a better sewer than the contract required them to build; and these modifications in the character of the sewer by reason of unforeseen difficulties of construction were passed upon and approved by the commissioner of public works through the inspectors on the job, accepted and paid for by plaintiff. The charge in question is open to the construction that if defendant contractors departed from the original contract, plans and specifications in the particulars complained of, defendants might be held liable for all the damages which plaintiff claimed, whether they

resulted from the particular defects complained of in the request or not. We think the court was not in error in refusing this request, or in covering the subject matter of the request in the manner in which it was covered by the charge of the court.

12.    Plaintiff also preferred a request in relation to article 13 of the contract which provided:

"The city shall have the right to amplify the plans or specifications, and explanatory notes and furnish additional drawings.

"If any errors in dimensions or omissions in any details be discovered, either on the drawings or in the specifications, or discrepancies between the figures and the actual construction of the work, the contractor shall immediately report the same to the commissioner for rectification. The contractor will not be allowed to take advantage of any such error or omission, but shall carry out the detail as originally intended and as essential to the proper construction and finish of the work."

In connection with this clause of the contract which was quoted in plaintiff's request to charge, the trial court was asked to charge:

"There is no testimony that the defendants made any report to the commissioner of public works that any such errors had been made or that any necessary details had been omitted from the plans and specifications. I therefore charge you that the defendants in failing so to do have breached the contract and you may take that in consideration in arriving at your verdict."

The contract was for defendants to construct a sewer which when completed should comply with the contract, plans and specifications provided by the city. The testimony indicates that while no direct written reports were made by defendant contractors

to the commissioner of public works, the commissioner of public works had inspectors representing him on the job practically all the time; that they frequently suggested changes in the sewer, and deviations from the line and grade as shown by the plans and specifications; and the city, having acted through its commissioner of public works and the inspectors employed by him, was not in a position to insist the defendants should have gone to the commissioner of public works each time any trifling change was made in the details of defendants' plan for constructing the sewer. Building sewers is a more or less practical matter, and any reports made by defendants to the inspectors employed by the city were reports made to the commissioner of public works, and the city is bound by such action of its inspectors. The general subject covered by this request to charge was, we think, fairly covered by the trial court in his charge.

13. Plaintiff's 26th assignment of error is predicated upon the failure of the trial court to give plaintiff's 18th request to charge, as follows:

"I charge you that the contract provides the following:

" 'The unit price on this sewer is to include the cost of using air, tunnel liner plates, or any other devices which may be necessary to fully complete this sewer at no extra cost to city.'

"I charge you that this provision of the contract is clear and unambiguous and instruct you as a matter of law under this provision of the contract, it was the duty of the contractor, Julius Porath & Son, to use air, tunnel liner plates, or any other devices which may be necessary to fully complete this sewer and if you find that the sewer was not built according to plans and specifications in the particulars as claimed by the plaintiff and the defendants did not

use the necessary devices to fully complete the sewer as contemplated by the contract, then you must find that the defendants have breached the contract and bring in a verdict for plaintiff.''

There is no question but that the contract, if clear and unambiguous, governed defendants as well as plaintiff; but the difficulty with this request is it has nothing to do with the issue shown by plaintiff's declaration and bill of particulars to have been before the trial court for consideration. The defendant contractors contracted to build a sewer of a particular kind and character under the supervision of the commissioner of public works who acted through inspectors. The city brought suit to recover certain specific items of damage set forth in its bill of particulars. It is immaterial whether the defendants used air, tunnel liner plates, or not, if they constructed a sewer substantially in accordance with the contract, plans and specifications which govern. There was no error in the trial court refusing this request to charge. All that is embodied in the request to charge that was material was covered by the charge of the trial court.

14. Plaintiff claims the court erred in refusing to give plaintiff's request to charge number 22, as follows:

''I charge you that under the law the opposite party may call the agent or employee of the other party in the lawsuit for the purpose of cross-examination, such witness when called to testify does not bind the employer by the statements that he makes on the stand.''

The statute, 3 Comp. Laws 1929, § 14220, provides:

''Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he

shall call as a witness in his behalf the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

This statute has been frequently construed. Its purpose was to do away with a technical rule of evidence and facilitate getting at the facts in a particular case so it might be tried upon the merits, and to give to each of the parties the same benefit of the other's testimony as though they had become witnesses in their own behalf. Testimony elicited upon cross-examination of the opposite party, or his agents, stands in no different position than it would if the adversary of the party calling the witness had called him himself. The act makes the agents and servants of a party subject to cross-examination by the opposite party without qualification. The statute does not give the right to make such witnesses the witnesses of the adversary of the party calling them. *Jones* v. *Railroad Co.,* 168 Mich. 1. Except as the statute provides the party calling such witnesses shall not be bound by, and may contradict, their testimony, no other right is conferred by the statute. *Johnson* v. *Union Carbide Co.,* 169 Mich. 651. The party calling the witness for cross-examination under the statute has the same right to contradict him as if the witness had

been called by the opposite party in his own behalf. *Cook* v. *Railroad Co.*, 189 Mich. 456. The testimony of an antagonist, or of his agent, called for cross-examination under this statute stands in no different position in the case than it would have stood had it been called out on cross-examination after he had taken the stand to testify in his own behalf. *Aphoresmenos* v. *McIntosh*, 189 Mich. 680. Such testimony may be contradicted and overcome by other testimony, but its effect cannot be destroyed or put aside by mere assertion. *Aphoresmenos* v. *McIntosh, supra; Steele* v. *City of Ionia*, 209 Mich. 595. Being in the case, such testimony is to be considered, and it cannot be eliminated because called out on cross-examination. *City of Kalamazoo* v. *Standard Paper Co.*, 182 Mich. 476. There was no error upon the part of the trial court in refusing this request to charge. On the other hand, it would have been error to have given it. *Swank* v. *Croff*, 245 Mich. 657; *Steele* v. *City of Ionia, supra.*

Plaintiff claims the trial court erred in refusing to give its request to charge number 24, as follows:

"I charge you that the measure of damages is the reasonable cost and expense of procuring the work and labor to be done and furnishing the necessary material in order to make the sewer to conform to the provisions of the contract. The proofs in this case show that it was necessary to make the following expenditures:

"Cleaning sewer barrel, 0-00 to 80-32.5 . $32,012.63
"Uncovering sewer, break No. 2 . . . . . . . 10,066.28
"Calking sewer . . . . . . . . . . . . . . . . . . . . . 20,665.13
"Sewer repair, concrete, Sta. 0-0 to 1-00 . 20,814.18
"Sewer repair, concrete, Sta. 28-49 to
37-65 . . . . . . . . . . . . . . . . . . . . . . . . . . 11,950.32
"Driving sheeting . . . . . . . . . . . . . . . . . . . 19,579.39

"Pumping .........................$35,957.93
"Miscellaneous material ..............   3,065,75
"Cost of relining, 2,856 ft. at $50......142,800.00
"Cost of reconstructing in tunnel
     Sta. 61-40 to 63-66,  226  ft.
     Sta. 78-82 to 80-32.5, 150.5 ft.

              376.5 ft.      58,500.00

             Total..............$355,411.61"

All of these items were in dispute by the testimony. The question of damages was submitted by the trial court to the jury, and plaintiff is not in a position to complain of the failure of the trial court to give this request to charge, and may not press the failure of the trial court to give this request as error in view of its next succeeding request to charge, number 25, in which the trial court was requested to charge the jury they were to "simply do the best you can according to all the evidence that has been introduced and allow some sum anywhere from one cent up to the full amount claimed by the plaintiff, if you allow anything."

Defendants very strenuously urge this sewer was constructed by defendant contractors substantially in accordance with the plans and specifications furnished by the city; that any collapse therein, or damages resulting therefrom, were not due to any fault of the contractors, but the blame primarily rested upon faulty engineering upon the part of the city because no preparation was made by plaintiff to obtain knowledge of the soil conditions before designing this sewer; that the design was an improper design, considering the soil conditions through which the sewer was constructed; and the city was really responsible for the collapse of the sewer because it

pumped quicksand out from under the sewer barrel and precipitated the break therein, resulting in its collapse. There was ample testimony introduced to sustain these contentions. Many authorities are presented to show that when the difficulties were encountered growing out of improper engineering and plan of the sewer to meet the soil conditions, the matters were discussed with the inspectors—representatives of the city—and the sewer constructed substantially in accordance with the requirements of the city; and having been done in accordance with the directions received from time to time by the contractors from the inspectors—representatives of the city—and the sewer having been approved from time to time as payments were made thereon, and finally approved after its completion, and accepted by the city, and put in use, the city is not in a position to claim damages for the collapse of the sewer which resulted from its own fault and neglect. It is unnecessary to consider these questions. Defendants have not appealed, and plaintiff has shown no reversible error in the case as disposed of by the trial court.

The judgment for plaintiff is, therefore, affirmed.

Nelson Sharpe, North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.