## J. Willard Babbitt v. Mary Ann Bumpus.

*Attorney and client—Value of services—Evidence—Requests to charge—Special questions to jury.*

1. In a suit by an attorney to recover the value of his services, he may show by his own testimony his experience and knowledge, and give his judgment as to such value, and to that end may testify as to his knowledge of the charges of other attorneys for like services in similar cases.

| 73 | 331 |
| 73 | 620 |
| 73 | 331 |
| 100 | 388 |
| 73 | 331 |
| 103 | 227 |
| 73 | 331 |
| 105 | 188 |
| 73 | 331 |
| 108 | 353 |
| 73 | 331 |
| 128 | 675 |

---

[1] See points of appellants' counsel for testimony claimed to show such default or neglect.

2. In such a case testimony offered by the defendant to show that the charges of the opposing attorneys in the cases in which the plaintiff rendered the services sued for were less than plaintiff's, and that said services were as important as, and of as much or even greater value than, plaintiff's, is properly excluded.

3. It is competent to show the amount involved in suits for the management and trial of which an attorney brings suit, such fact having much to do with the value of the services so rendered.

4. A lawyer is not an insurer of the result in a case in which he is employed, unless he makes a special contract to that effect, and for that purpose; nor is there any implied contract that he will bring to bear learning, skill, or ability beyond that of the average of his profession; nor can more than ordinary care and diligence be required of him.

5. Great care and consideration should be given by courts and jurors to questions involving the proper service to be rendered by attorneys when they have acted in good faith, and with a fair degree of intelligence, in the discharge of their duties when employed under the usual implied contract; and under such circumstances the errors must be very gross before the attorney can be held responsible. They should be such as to render wholly improbable a disagreement among good lawyers as to the character of the services required to be performed, and as to the manner of their performance under all of the circumstances in the given case, before such responsibility attaches.

6. A party has a right to have the law of his case presented to the jury in its plainest, simplest form; and if it is properly embodied in that form in requests to charge, their refusal is error unless the substance of such requests is as well given by the court in the general charge.

7. Special requests asking for the finding of questions of fact should be submitted to the jury.

So *held*, where the questions were as follows:

*a*—What was the value of plaintiff's services?

*b*—Has not defendant paid and caused to have been paid to plaintiff sufficient amounts of money and produce to compensate him in full for his services and expenses?

*c*—Has not defendant paid and caused to have been paid to plaintiff the following amounts, to wit, $1,484.85; credited produce admitted, $45.46; note of August 15, 1883, amounting to $150; total, $1,680.31?

8. It is error for the court in his charge to the jury, in a case

involving the proper performance of services by an attorney, to express it as his opinion that the jury are not warranted by the testimony in saying that the plaintiff was in any way negligent in such performance.

Error to Wayne. (Gartner, J.) Argued October 23, 1888. Decided January 18, 1889.

*Assumpsit.* . Defendant brings error. Reversed. The facts are stated in the opinion.

*Samuel W. Burroughs,* for appellant, contended:

1. The value of the services of counsel under circumstances of general similarity to those under which the services in suit were rendered may be shown; citing Rogers, Exp. Test. § 159; *Thompson v. Boyle,* 85 Penn. St. 477; *Ottawa University v. Parkinson,* 14 Kan. 160.

2. Only in the absence of some express contract fixing the amount of the attorney's compensation, if an action is instituted to enforce payment, is it necessary to determine the value of the services rendered; citing Rogers, Exp. Test. § 159; *Harnett v. Garvey,* 66 N. Y. 641; *Williams v. Brown,* 28 Ohio St. 547, 551; *Railroad Co. v. Allbritton,* 38 Miss. 242, 246, 273; *Allis v. Day,* 14 Minn. 516; *Anthony v. Stinson,* 4 Kan. 211; *Ottawa University v. Parkinson,* 14 Id. 159; *Head v. Hargrave,* 14 Cent. L. J. 388; *Jevne v. Osgood,* 57 Ill. 340.

3. When conflicting charges are given, one of which is erroneous, it is to be presumed that the jury may have followed the erroneous one, and the judgment will be reversed; citing *Railroad Co. v. Munroe,* 47 Mich. 152.

4. The judge in charging must not, either directly or indirectly, force his opinion as to the credibility of a witness upon the jury; citing *Sheahan v. Barry,* 27 Mich. 226; *Railroad Co. v. Kirkwood,* 45 Id. 51; *Mawich v. Elsey,* 47 Id. 10; *People v. Lyons,* 49 Id. 78.

*Conely, Maybury & Lucking,* for plaintiff, contended:

1. "It is very difficult for a judge to aid a jury in arriving at a fair verdict without indicating to some extent his impression on facts and witnesses;" citing *Sheahan v. Barry,* 27 Mich. 228.

2. Act No. 15, Laws of 1885, provides that special questions presented to the jury shall not exceed five in number, and shall be each in single, short sentences, readily answered by yes and

no; and under this statute the refusal of the judge to submit defendant's special requests was justified.

SHERWOOD, C. J.   This action is brought by plaintiff to recover of the defendant the value of services rendered for her as attorney and counselor at law in the prosecution of a suit in the circuit court for the county of Washtenaw, in chancery, wherein Isaac N. Bumpus was complainant, and Myron M. Bumpus was defendant,—a partition case,—for the division of eighty acres of land. The plaintiff appeared in the case for defendant and disclaimed, Myron having, before the suit was commenced, quitclaimed his interest in the land to this defendant; and nothing further seems to have been done in the case.

Also for services in a suit in the Wayne circuit court, in chancery, wherein the defendant and Samuel R. Bumpus were complainants, and Isaac N. Bumpus was defendant, for the purpose of obtaining the title to certain lands held by Isaac, who was a son of Mrs. Bumpus. The complainants' bill was dismissed on the hearing, and complainants appealed to this Court, and the decree was affirmed; plaintiff being their solicitor therein.   See 59 Mich. 95.

Also for retainer and services in a suit in the circuit court for the county of Washtenaw, in chancery, wherein Isaac N. Bumpus was complainant, and Mrs. Bumpus and her husband were defendants.   This suit was to obtain specific performance of a contract.   The defendants were beaten on the hearing, and a decree of $8,000 was rendered against Mrs. Bumpus.   From this decree she appealed to this Court, and the decree was reversed, and the complainant's bill dismissed.   See 53 Mich. 346.

Also for services in a partition case in chancery, in the Washtenaw circuit, wherein Isaac N. Bumpus was

complainant, against Mrs. Bumpus and others. This case was subsequently settled.

Also for retainer and services in the case of the *People v. Myron M. Bumpus,* informed against for the crime of murder.

It is for retainer and services and disbursements in these cases that the plaintiff makes his claim against the defendant, amounting, as he presents his bill, to the sum of $2,165.25, and upon which he credits the defendant with the payment of $1,484.75, and brings his suit for the balance, being $680.50.

Defendant pleaded the general issue, and gave notice that she would show on the trial set-off, under the common counts, to the amount of $1,684.75 ; and further that such services, if rendered for the defendant, were so rendered under an agreement that the plaintiff was to have a retainer in each case, where defendant was a party, of $25, and the further sum of $25 per day for each day that the plaintiff was actually engaged in court upon the trial and hearing of said cases, and that the retainers were to be full pay for all other services, and that she has fully performed her said agreement with the plaintiff ; that the plaintiff failed and neglected to perform his agreement with her, but negligently did her business, failed to take and perfect appeals when he should have done so, and mismanaged her said business, and so improperly advised her in relation thereto as to unnecessarily cause her to pay and lay out large sums of money, which she should recoup against the plaintiff.

Upon the trial of the case the plaintiff recovered a verdict for $500. The defendant brings error, basing the same upon the rulings of the court upon receiving the testimony (all of which appears in the record), as well as upon the charge and refusals to charge.

The plaintiff was sworn in his own behalf as to the

value of his services, and the first and second errors assigned are aimed at this testimony.   He was a competent witness, under our statute, for that purpose, and, like all other witnesses upon that subject, was entitled to show his own experience and knowledge, and give his judgment as to the value of his services, and upon his own theory of the case, which was to the effect that there was no special agreement as to the amount he was to have for his work, but that, when he was inquired of by his client, or by those who were authorized by her to engage his services, as to what he charged, he told them his retainer was $25, and for services such sums as are stated in his bill; and it was entirely competent for him to testify as to his knowledge of the charges of other attorneys for like services in similar cases.   He thereby only gave evidence of his own qualifications to speak of the value of his own services charged for, and this is always proper.   And the same may be said of the witness Robison's testimony, referred to in the eighth assignment of error, relating to the same subject.   No error was committed in any of these rulings.

Thirteen assignments of error relate to the exclusion of testimony on the part of the defendant, showing that less was charged by the attorneys for the other side, in the same causes when the plaintiff was engaged for her, than was charged by the plaintiff, and that the services of the former were quite as important as, and of as much, or even greater, value than, were those of the plaintiff. The circuit judge did right in rejecting this testimony.

The defendant's counsel might not have charged what their services were worth, or even performed them gratuitously, as is often the case where parties are unable to pay.

The court allowed the plaintiff, in describing the services he performed for defendant, to say that—

"I had consultations with Mary Ann Bumpus, Samuel R. Bumpus, Myron Bumpus, and a great number of witnesses."

Defendant moved to strike this testimony out, because such service was not specifically stated in the declaration or bill of items. This was not done. There was no error in this ruling. The testimony descriptive of the character of the services charged for was admissible under the pleadings.

It was also competent to ask the plaintiff, when on the stand, what was the amount involved in the five suits, or in any one or more of them; also the total amount charged for his services in either or all of them. The amount involved in the issue has very much to do with the value of the services rendered, and the responsibility assumed by the attorney. The court stated the law correctly in his rulings upon these several subjects. The total amount charged was certainly competent, as the reasonableness of this was one of the questions to be passed upon by the jury, if they did not find a contract relating thereto as claimed by either of the parties.

Six exceptions were taken by defendant's counsel to remarks made by the circuit judge which she deemed prejudicial to her case, and which it is claimed ought not to have been made. We have examined what was said on these several occasions by the circuit judge, as it appears in the record, and we do not think either of these exceptions should be sustained. A lawyer is not an insurer of the result in a case in which he is employed, unless he makes a special contract to that effect, and for that purpose. Neither is there any implied contract, when he is employed in a case, or any matter of legal business, that he will bring to bear learning, skill, or ability beyond that of the average of his profession. Nor can more than

73 Mich.—22.

ordinary care and diligence be required of him, without a special contract is made requiring it. Any other rule would subject his rights to be controlled by the vagaries and imaginations of witnesses and jurors, and not infrequently to the errors committed by courts. This the law never has done; and the fact that the best lawyers in the country find themselves mistaken as to what the law is, and are constantly differing as to the application of the law to a given state of facts, and even the ablest jurists find themselves frequently differing as to both, shows both the fallacy and danger of any other doctrine; and especially is this so as to questions of practice, the construction of statutes, and particularly those arising under our criminal and probate laws. Frequently we find the decisions of courts of last resort in the different states directly opposed to each other upon the same questions, and resting upon the same state of facts. These all admonish courts and jurors that great care and consideration should be given to questions involving the proper service to be rendered by attorneys when they have acted in good faith, and with a fair degree of intelligence, in the discharge of their duties when employed under the usual implied contract. Under such circumstances, the errors which may be made by them must be very gross before the attorney can be held responsible. They should be such as to render wholly improbable a disagreement among good lawyers as to the character of the services required to be performed, and as to the manner of their performance under all the circumstances in the given case, before such responsibility attaches. We find no error under either or any of these exceptions, committed in the rulings of the circuit judge upon this subject.

The next group of exceptions, numbering four, relates to the testimony given by witness Crane. They mostly

concerned the value of Babbitt's services, and the manner in which he conducted the defendant's business, and certain transactions and telegrams between counsel. We have examined them all in the record, and find no fault in the judge's rulings concerning them.

The next four assignments presented by defendant, and argued, are:

1. Referring to one of defendant's suits which was discontinued, defendant's counsel asked witness Myron Bumpus, "Did I advise you [meaning Mr. Burroughs] to discontinue it?"

2. "Well, about how much will it cost you to go on with that case?"

3. "Why did your mother, through you [Myron], take Mr. Babbitt's advice, rather than mine?" (meaning Mr. Burroughs.)

4. "Was it not because Mr. Babbitt was your attorney of record, and because he had control of the case as such?"

These questions were all put to the witness Myron Bumpus, who it was claimed acted for his mother, the defendant, and were all irrelevant, under the view we take of the case, and the court committed no error in excluding the answers.

It appears, when the settlement of one of the suits occurred, Myron, who acted for his mother, requested Mr. Babbitt to so make it that it would be final as to all matters between her and Isaac Bumpus, the plaintiff. This Isaac's counsel would not consent to, and the settlement was made without it, and Isaac brought suit again against the defendant, and about three months thereafter discontinued it. This second suit was brought in the Wayne circuit, and counsel for defendant asked Myron, when on the stand,—

"What was the damage you sustained by the bringing of the Wayne county suit after the settlement?"

The witness was not allowed to answer, and we think properly so. It did not appear that it was by Babbitt's fault that the defendant was subjected to the claimed expense. This was defendant's 34th assignment of error.

We see nothing in defendant's 10th, 32d, or 33d assignments of error needing further notice. None of them can be sustained.

At the close of the trial the defendant's counsel asked the court to instruct the jury as follows:

"5. Myron Bumpus, without conflict, appears to have had the management of defendant's business in all the litigation referred to in this case, for which the plaintiff seeks to recover; and that the bargain, either under plaintiff's or defendant's version, was made by and between plaintiff and Myron; and that, if the jury believe from Myron's testimony that some time after plaintiff came to Detroit in the interest of Myron in the murder case, and that this was after all the services were performed by plaintiff, and that Myron called at the office of Mr. Babbitt, and there requested the plaintiff to show his books, and make a settlement, and that plaintiff refused so to do, claiming that it was unnecessary, as he (plaintiff) had looked his books over, and found that he was indebted to defendant, having received enough moneys to pay him for all his services, then and in such case the plaintiff cannot recover, and the verdict of the jury must be for defendant."

"7. Plaintiff has introduced testimony tending to show the value of his services, and, if he relies upon value, rather than upon his express contract as alleged, he must stand by the actual value of his services, and must accept, under the law, such amounts as those services were reasonably worth; and if from all the testimony in this case the jury believe the amounts which he has received, and of which he acknowledges credits, were sufficient in amount to compensate him for his services, then and in such case he cannot recover, and the verdict of the jury must be for the defendant."

We think these requests state the law applicable to the facts in this case in terse and succinct language, and we can see no reason why they should not have been

given; and their substance was really not given in the general charge, or, if it was, it was in a manner that might be easily misunderstood by the jury. A party has the right to have the law of his case go to the jury in its plainest, simplest form; and if it is properly embodied in a request in that form, prepared by counsel, and furnished to the court, it ought to be thus given, and the request should not be ignored by the court. We have had occasion to allude to this subject before, and when the court declines to give such requests it must appear that the substance of them has been as well given by the court in its own language, or the omission will be error.

The defendant requested the court to submit five special questions in writing to the jury for their special finding, as follows:

"1. What was the value of plaintiff's services?
"2. Has not defendant paid and caused to have been paid to plaintiff sufficient amounts of money and produce to compensate him in full for his services and expenses?
"3. Has not defendant paid and caused to have been paid to plaintiff the following amounts, to wit, $1,484.85; credited produce admitted, $45.46; note of August 15, 1883, amounting to $150; total, $1,680.31?
"4. At the time plaintiff was discharged, in April or May, 1883, did not plaintiff admit to Myron that he had looked the matter all over, and that he was in defendant's debt at the time?
"5. Was not the bargain between plaintiff and defendant that plaintiff was to have had $25 for each retainer, and $25 for his services for each day actually engaged in the courts, and expenses, for his services?"
" The Court. I will decline to do that, Mr. Burroughs."

The 1st, 2d, and 3d of these special requests should have been submitted to the jury. They ask for the finding of questions of fact, and it was the privilege of the defendant to have them found specially.

We think, when the court said, in speaking of the

duty of the plaintiff while in the service of the defendant as her attorney :

" Now, an attorney is obliged to do the very best he can. In this case here, it has been done.    *    *    *    I don't think you are warranted by the testimony in saying that Mr. Babbitt was in any way negligent,"—he went too far.

While these statements may not have prejudiced the rights of the defendant before the jury, it is not our privilege to say they did not. They might have done so, and such certainly was their tendency. We think it was error.

For the errors mentioned the judgment must be reversed, and a new trial granted.

The other Justices concurred.