BEATTIE v FIRNSCHILD

Docket No. 83712. Submitted February 20, 1986, at Detroit. Decided
    July 7, 1986.

    Plaintiffs, William R. Beattie and Linda K. Beattie, decided to
    purchase a house owned by plaintiff Linda K. Beattie's mother,
    Catherine Davis. Plaintiffs and Mrs. Davis consulted defendant,
    Stuart J. Firnschild, an attorney, who agreed to draft a land
    contract to effectuate the conveyance of the property in ques-
    tion. Plaintiffs paid a down payment to Mrs. Davis and com-
    menced making monthly payments. Subsequently, plaintiffs
    decided to have a new home constructed for them and per-
    suaded Mrs. Davis to deed the house, which was the subject of
    the land contract, to them so plaintiffs could sell the house and
    use the proceeds as a down payment for the house to be built.
    Plaintiffs and Mrs. Davis again consulted defendant who
    drafted the documents necessary to effectuate their wishes.
    Plaintiffs thereafter contracted for the construction and pur-
    chase of the new house and signed a buy-sell agreement for the
    sale of the old house. A title search was undertaken on the old
    house. The search revealed a recorded quitclaim deed by which
    Mrs. Davis had conveyed the house to herself and her three
    daughters as joint tenants with rights of survivorship some five
    years prior to the land contract with plaintiffs. Mrs. Davis'
    other daughters refused to sign a deed in favor of plaintiffs.
    Consequently, plaintiffs were unable to sell the house and had
    to make other arrangements to make the down payment on
    their new house. Plaintiffs filed suit in the Wayne Circuit Court
    against defendant, alleging legal malpractice. The circuit court
    removed the case to the district court, which granted a directed
    verdict in favor of defendant based on plaintiff's failure to
    present expert testimony in support of their allegation of

REFERENCES

Am Jur 2d, Appeal and Error §§ 110, 111

Am Jur 2d, Attorneys at Law §§ 120, 197, 217, 218, 223-225

Admissibility and necessity of expert evidence as to standards of
    practice and negligence in malpractice action against attorney. 14
    ALR4th 170.

See also the annotations in the ALR3d/4th Quick Index under
    Attorneys

malpractice. The circuit court, Irwin H. Burdick, J., affirmed the district court on appeal. Plaintiffs appealed to the Court of Appeals by leave granted. *Held:*

1. Plaintiffs' claim of malpractice was based on an allegation that defendant had violated the Code of Professional Responsibility, in particular, the disciplinary rule prohibiting lawyers from representing multiple clients with conflicting interests. Inasmuch as a violation of that disciplinary rule was not readily apparent, expert testimony was necessary to establish plaintiffs' claim. Therefore, the district court did not err in granting a directed verdict in favor of defendant.

2. The district court did not abuse its discretion in preventing plaintiffs from calling defendant as a witness to elicit expert testimony in support of their claim.

Affirmed.

1. APPEAL — DIRECTED VERDICT.

The Court of Appeals, when reviewing a grant of a defendant's motion for a directed verdict, must consider whether the plaintiff's proofs, viewed in a light most favorable to the plaintiff, are sufficient on each element of the claim to justify submitting it to the jury.

2. ATTORNEY AND CLIENT — LEGAL MALPRACTICE.

In an action against an attorney for negligence or breach of implied contract, the plaintiff has the burden of proving: (1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury; and (4) the fact and extent of the injury alleged.

3. ATTORNEY AND CLIENT — CODE OF PROFESSIONAL RESPONSIBILITY — LEGAL MALPRACTICE.

The Code of Professional Responsibility is a standard of practice for attorneys which expresses in general terms the standards of professional conduct expected of lawyers in their relationships with the public, the legal system, and the legal profession; there is a rebuttable presumption that violations of the Code of Professional Responsibility constitute actionable legal malpractice.

4. ATTORNEY AND CLIENT — CODE OF PROFESSIONAL RESPONSIBILITY — LEGAL MALPRACTICE — CLIENTS WITH CONFLICTING INTERESTS.

A plaintiff who claims legal malpractice based on an allegation that the defendant attorney violated the disciplinary rule of the Code of Professional Responsibility prohibiting lawyers from representing multiple clients with conflicting interests must

present expert testimony to establish the defendant's alleged violation; such plaintiff may elicit the required expert testimony from the defendant where the trial court, in the exercise of its discretion, allows it.

5. WITNESSES — EXPERT TESTIMONY — APPEAL.
   The Court of Appeals will not reverse a trial court's admission or exclusion of expert testimony absent a clear abuse of discretion.

*Tucker, Barbour & Mack, P.C.* (by *Milton L. Mack, Jr.*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Patrick M. Barrett* and *Christine D. Oldani*), for defendant.

Before: J. H. GILLIS, P.J., and T. M. BURNS and W. F. HOOD,* JJ.

W. F. HOOD, J. In this action for legal malpractice, plaintiffs, William R. Beattie and Linda K. Beattie, appeal by leave granted from a Wayne Circuit Court order afirming the district court's judgment of no cause of action based upon a directed verdict. Plaintiffs claim (1) that the district court erred when it granted a directed verdict to defendant and (2) that the district court erred when it prevented plaintiffs from eliciting expert testimony from defendant. We do not think the lower court erred in the ways suggested by plaintiffs and accordingly we affirm.

I

Plaintiffs' legal malpractice action against defendant, Stuart J. Firnschild, concerned the title to a house at 1242 Thirteenth Street in Wyandotte, Michigan.

Plaintiffs were married in 1969. Catherine Davis

---

* Circuit judge, sitting on the Court of Appeals by assignment.

is plaintiff Linda Beattie's mother. The Beatties rented the house on Thirteenth Street from Mrs. Davis, who owned it, some ten months after they were married. They lived there five years and then discussed with Mrs. Davis the possibility of purchasing the house. After Mrs. Davis agreed to sell them the house in 1976, the Beatties and Mrs. Davis went to see defendant to have the necessary papers drawn.

Defendant agreed to handle the matter. He took the deed from Mrs. Davis and agreed to draw up a land contract. At the meeting, defendant did not advise plaintiffs of the cost of title insurance nor did he advise that a title search should be done. There was no discussion about an existing title policy or title commitment. Moreover, defendant represented all three parties.

A week later, the three returned to defendant's office to sign the papers. Defendant was not present but his secretary gave them the land contract, which the Beatties and Mrs. Davis signed. The plaintiffs paid a down payment to Mrs. Davis and began making the monthly payments on the land contract.

At some point the Beatties decided to build a house on Grosse Ile. Because they lacked funds for the down payment, they asked Mrs. Davis to move in with them. Plaintiffs informed Mrs. Davis that they could not afford to build the new house unless they had the entire equity in the Thirteenth Street house for a down payment. Mrs. Davis was receptive to the idea.

Plaintiffs and Mrs. Davis went again to see defendant in 1978, explaining that they wanted Mrs. Davis to deed the Thirteenth Street house to them so they could build a new house. Defendant, concerned about protecting Mrs. Davis, indicated that he would meet with them later to take care of

a way to protect Mrs. Davis' $16,000 equity in the house.

Plaintiffs and Mrs. Davis met again with defendant. Defendant indicated that he and Mrs. Davis had talked and arrived at a way of protecting her. Mrs. Davis signed the warranty deed.

Sometime later, there was another meeting with defendant. Defendant indicated he had prepared a document to protect Mrs. Davis which would go into effect when they signed a purchase agreement for the new house. The plaintiffs signed an agreement with a construction company, applied for a mortgage, and signed the documents to protect Mrs. Davis.

It took about a year and a half to complete the new house. In the meantime, plaintiffs decided to sell the Thirteenth Street house. They got a written deed on the house and signed the purchase agreement. When the realtor ordered title work on the house, a problem was discovered. A quitclaim deed, which conveyed the property from Mrs. Davis to herself and her three daughters as joint tenants with rights of survivorship, signed by Mrs. Davis in January, 1971, was discovered. The quitclaim deed was witnessed by plaintiff William Beattie's father. William Beattie was also present at the signing, but he did not remember it. Plaintiff Linda Beattie was also present when the quitclaim deed was signed, but she apparently believed it was a will.

Plaintiff William Beattie was unsuccessful in getting his wife's sisters to sign the deed and the Thirteenth Street house was never sold. Plaintiffs moved into the Grosse Ile house by borrowing money from other relatives and the builder. Mrs. Davis never moved in with plaintiffs. Plaintiffs eventually sold the Grosse Ile house in 1982 for $150,000, earning roughly $32,000 on the house.

On June 4, 1980, plaintiffs filed their legal malpractice claim against defendant in Wayne Circuit Court. In November, 1982, the case was removed to the 27th District Court. The district court directed a verdict for defendant in February, 1984, and plaintiffs appealed to the Wayne Circuit Court, which affirmed the directed verdict. This Court granted plaintiffs' application for leave to appeal on June 17, 1985.

II

Plaintiffs claim the district court erred when it granted the directed verdict in favor of defendant on the basis that plaintiffs had failed to supply expert testimony. We review the grant of defendant's motion for directed verdict by asking whether plaintiffs' proofs, viewed in a light most favorable to plaintiffs, are sufficient on each element of the claim to justify submitting it to the jury. *Association Research & Development Corp v CNA Financial Corp,* 123 Mich App 162, 169; 333 NW2d 206 (1983), lv den 419 Mich 881 (1984). In an action against an attorney for negligence or breach of an implied contract, the plaintiff has the burden of proving four elements: (1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury; and (4) the fact and extent of the injury alleged. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981), lv den 413 Mich 913 (1982).

An attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client, assuming the position of highest trust and confidence. *Lipton v Boesky,* 110 Mich App 589, 594; 313 NW2d 163 (1981). The Code of Profes-

sional Responsibility is a standard of practice for attorneys which expresses in general terms the standards of professional conduct expected of lawyers in their relationships with the public, the legal system, and the legal profession. *Lipton, supra,* p 597. There is a rebuttable presumption that violations of the Code of Professional Responsibility constitute actionable malpractice. *Sawabini v Desenberg,* 143 Mich App 373, 385; 372 NW2d 559 (1985).

This Court discussed a plaintiff's obligation to offer expert testimony in a legal malpractice action in *Joos v Auto-Owners Ins Co,* 94 Mich App 419, 422; 288 NW2d 443 (1979), lv den 408 Mich 946 (1980). The Court noted:

> The issue presented, as to whether a plaintiff in a legal malpractice action must offer expert testimony as to the standard of care to which an attorney will be held and as to a violation of that standard, has not been addressed previously by any published Michigan authority. As a general principle, an attorney must bring to bear the skill, learning, and ability of the average practitioner of law when conducting legal business for a client. He or she must exercise ordinary care or diligence in the prosecution of the client's interests. *Babbitt v Bumpus,* 73 Mich 331; 41 NW 417; 16 Am St Rep 585 (1889), 7 Am Jur 2d, Attorneys at Law, § 168, pp 146-147.
>
> In our attempt to resolve the issue before us, we have been guided somewhat by Michigan case law authority in the area of medical malpractice. The commonly held rule in medical malpractice cases is that expert testimony is a prerequisite to a plaintiff-patient's right to recover from either a physician or a hospital. *Bivens v Detroit Osteopathic Hospital,* 77 Mich App 478, 488; 258 NW2d 527 (1977), *rev'd on other grounds* 403 Mich 820 (1978). However, this is not an absolute principle of law devoid of exceptions.

Thus, it held:

> Although proof of purported negligence arising from pretrial or trial strategy may or may not require expert testimony, plaintiffs' allegation that defendant breached the applicable standard of care when he failed to inform Avery of the offers by Joos to settle prior to trial and their allegation that he refused to settle on the second day of trial when he received authority to do so does not. We do not hesitate to hold that under the allegations of facts before us, an attorney has, as a matter of law, a duty to disclose and discuss with his or her client good faith offers to settle. It is well within the ordinary knowledge and experience of a layman jury to recognize that, under facts such as those alleged in the instant case, the failure of an attorney to disclose such information is a breach of the professional standard of care. [Footnote omitted. 94 Mich App 424.]

Here, plaintiffs urge that expert testimony is only required where the malpractice claim is not covered by any specific provision in the Disciplinary Rules. In the plaintiffs' view, the Disciplinary Rules and the Code of Professional Responsibility have the effect of statutes and whether they have been violated is a question of law. They assert that the court need not take expert testimony to explain a violation of a statute.

This reasoning is flawed. This Court has rejected the argument that a violation of the Code of Professional Responsibility is negligence per se, in favor of the proposition that a code violation is rebuttable evidence of malpractice. See *Lipton, supra,* pp 595-598. In our view, plaintiffs' allegation that the Disciplinary Rules have been violated, rather than an allegation that the common-law standard of care has been breached, does not relieve them of the obligation to present expert

testimony, unless the violation was so obvious that such testimony was not required.

Plaintiffs claim that defendant violated DR 5-105 of the Code of Professional Responsibility, which prohibits lawyers from representing multiple clients with conflicting interests. Other states have required expert testimony in legal malpractice actions where the lawyer has been similarly accused. See 14 ALR4th 170, § 7, p 188.

Expert testimony in this case was required to establish that defendant violated DR 5-105. Defendant was representing members of this family in a simple real estate transaction. It is not obviously apparent that defendant violated the Code of Professional Responsibility. This is especially true if defendant happened to believe his independent judgment would not be adversely affected by representing these multiple clients. See DR 5-105(A).

*Joos, supra,* is distinguishable. In *Joos,* the defendant did not inform his clients of settlement offers. Here, the Disciplinary Rule is fairly vague. See 14 ALR4th 170, § 7, *supra.* The trial court did not err by concluding that expert testimony was required to establish a prima facie case of malpractice under the facts presented.

### III

Next we consider whether the district court erred when it prevented plaintiff from eliciting expert testimony from defendant in this legal malpractice action. We find no error.

In circuit court, plaintiffs filed a witness list which listed only themselves as witnesses. Defendant was presumably listed on his list. When the case was remanded to district court, the court signed a pretrial order which ordered the parties to exchange lists of witnesses to be called at trial,

and ordered that no witness could be called unless listed except on leave granted upon a showing of good cause. At trial, the district court precluded plaintiffs from calling defendant as their expert witness.

A plaintiff in a malpractice case may elicit required expert testimony from the defendant. *Wallace v Garden City Hospital,* 111 Mich App 212, 216; 314 NW2d 557 (1981), rev'd on other grounds 417 Mich 907 (1983); *Rice v Jaskolski,* 412 Mich 206, 212; 313 NW2d 893 (1981). It is, however, within the trial court's discretion to admit or exclude such testimony, and the exercise of discretion will not be disturbed absent a clear abuse of that discretion. *Wood v Posthuma,* 108 Mich App 226, 230; 310 NW2d 341 (1981), lv den 413 Mich 923 (1982).

We find no abuse in the trial court's determination that plaintiffs could not call defendant as an expert witness. See *Wood, supra; Davis v Lhim,* 124 Mich App 291, 309; 335 NW2d 481 (1983), remanded for reconsideration in light of *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1985), see 422 Mich 875; 366 NW2d 7 (1985). Defendant was entitled to some notice that he was to be called as an expert to testify against himself and establish a standard of care. The adverse party statute did not relieve plaintiffs of the obligation to list witnesses. *Detroit v Porath,* 271 Mich 42, 75; 260 NW 114 (1935). We perceive no absolute right on plaintiffs' part to call defendant as an expert witness.

Affirmed.