798 P.2d 175

James I. WEISS, D.D.S., Petitioner–Appellant,

v.

The NEW MEXICO BOARD OF DENTISTRY, Respondent–Appellee.

No. 18249.

Supreme Court of New Mexico.

Aug. 21, 1990.

Christian Earl Eaby, Albuquerque, for petitioner-appellant.

Hal Stratton, Atty. Gen., Sarah Alley, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

MONTGOMERY, Justice.

In January 1987 appellant, James I. Weiss, D.D.S., was convicted of four counts of making or permitting a false claim for reimbursement for public assistance services, a fourth degree felony under NMSA 1978, Section 30-40-4 (Repl.Pamp.1989). The Board of Dentistry thereafter revoked his license to practice dentistry in a proceeding under the Uniform Licensing Act, NMSA 1978, Sections 61-1-1 to -33 (Repl. Pamp.1989). The Board found that Weiss had incurred the four convictions and that he was not sufficiently rehabilitated to warrant the public trust. Weiss appealed this decision to the district court, which affirmed, and now seeks further review in this Court. The principal issue on appeal is whether a conviction itself, as distinguished from the underlying conduct, is a sufficient basis for revoking a dental license. We hold that it is, reject Weiss's other claims of error, and affirm the district court.

## I. *Factual Background and Issues*

In 1986 the attorney general undertook an extensive investigation of Medicaid fraud in New Mexico. The investigation resulted in an eighty-two count indictment against Dr. Weiss by a grand jury in Bernalillo County, alleging numerous instances of fraud and losses of several thousands of dollars in connection with visits by Weiss to two nursing homes in Albuquerque to provide examinations and treatments to patients and residents. After issuance of the indictment, negotiations between Weiss and the state ensued in late 1986 and culminated in a plea and disposition agreement, under which Weiss agreed to plead guilty to one count and no contest to three counts of making or permitting a false claim for reimbursement for public assistance services and the state agreed that all pending charges would be dismissed and no additional charges brought. Weiss also agreed to make restitution of investigative costs and $7,000.00 of "provable overpayments."

The court accepted the plea agreement at a hearing in which Weiss affirmed that he had entered into it knowingly and voluntarily. The court thereupon found him guilty of the offenses charged and sentenced him to four consecutive eighteen-month periods of incarceration, all but four months of which were suspended, and ordered him to make restitution and pay the costs of the investigation.

Three months later the Board began license-revocation proceedings. An amended "notice of contemplated action" (NCA) informed Dr. Weiss that the Board had received allegations that he had been convicted of the four felony counts and that these allegations, if not rebutted or explained, constituted a basis to suspend or revoke his license. Weiss responded and the Board conducted a two-day hearing, following which it made findings of fact and conclusions of law and revoked the license on the basis of the four convictions, as authorized by the Dental Act (NMSA 1978, Sections 61–5–1 to –34 (Repl.Pamp.1989)) and by the Criminal Offender Employment Act (NMSA 1978, Sections 28–2–1 to –6 (Repl. Pamp.1987)). The Board also found (Find-

ing No. 16) that Weiss had engaged in a protracted course of conduct of failing to practice dentistry in a professionally competent manner, involving grossly incompetent performance of dental services, obtaining or attempting to obtain fees by fraud or misrepresentation, and making false or misleading statements regarding the value of his dental treatments.

Weiss petitioned the district court for review of the Board's action. The court reviewed the record and affirmed the Board's findings and decision. While the case was pending before it, the district court considered three motions filed by Weiss to supplement the record. One of the motions, which was denied, sought to include in the record an affidavit of an attorney as an expert in criminal law. The attorney expressed the opinion that Weiss's counsel in the criminal case, in advising him in connection with the plea and disposition agreement, had not understood the nature and consequences of his guilty plea, that the plea had not been knowingly and intelligently entered, and that Weiss had received ineffective assistance of counsel.

On appeal to this Court Weiss asserts eleven points of error. Many of these are redundant and overlapping; we choose to group them under the following four issues on appeal: (1) In revoking Weiss's license, did the Board properly rely upon the four convictions themselves, as distinguished from the conduct underlying them? (2) In its notice of contemplated action, did the Board adequately apprise Weiss of the grounds for the contemplated revocation of his license? (3) Was there substantial evidence before the Board to support its finding that he was not rehabilitated and to support the findings of unprofessional conduct? (4) Should the district court have supplemented the hearing record to include the affidavit regarding the allegedly ineffective assistance of counsel in the criminal proceedings and consequent unknowing and unintelligent guilty plea? We shall consider these issues in the order just listed.

## II. *Sufficiency of Convictions Themselves as Basis for License Revocation*

Throughout his briefs in this Court, Dr. Weiss manifests the understanding that proof of a felony conviction by itself, as opposed to proof of the conduct underlying the conviction, is not a sufficient basis to revoke a license. For example, he charges that the members of the Board were "under the misapprehension that a license to practice dentistry in the state of New Mexico could be revoked on the basis of a conviction alone * * *." Actually, the Board's apprehension was correct and Weiss's understanding is wrong. Under New Mexico law as set out in both the Dental Act and the Criminal Offender Employment Act (COEA), a conviction *by itself* is a sufficient basis, where the licensee has not been rehabilitated, to revoke the license.

The Dental Act, in Subsection 61–5–14(A)(4), permits the Board to deny, revoke or suspend any license, in accordance with the procedures in the Uniform Licensing Act, upon the ground that the licensee has been convicted of a felony. The COEA, in Subsection 28–2–4(A)(1), permits any board or agency having jurisdiction over the practice of a profession to suspend or revoke any license where the licensee has been convicted of a felony directly relating to the particular profession. In this case, the Board found, and we agree, that the felony of making or permitting a false claim for reimbursement for public assistance services directly relates to the profession of dentistry.

In *Varoz v. New Mexico Board of Podiatry*, 104 N.M. 454, 722 P.2d 1176 (1986), the board revoked the license of a podiatrist who had been convicted of eight counts of Medicare fraud. The Tenth Circuit Court of Appeals had reversed five of these convictions, and we held that the statute of limitations had run on one of the others. Nevertheless, we further held that the remaining two convictions provided a sufficient basis for the revocation. We said, with reference to one of the convictions: "Under Sections 61–8–11 [of the Podiatry Act] and 28–2–4, the conviction, being final

and presumptively valid, formed a separate, independent, and adequate basis for revoking Varoz's license." 104 N.M. at 458, 722 P.2d at 1180 (citations omitted). With reference to the other conviction: "Because the other conviction also provided a timely and adequate basis for revoking Varoz's license, the Board's decision resting on both convictions must stand * * *." *Id.*

Similarly, in *Garcia v. State Board of Education*, 102 N.M. 306, 694 P.2d 1371 (Ct.App.1984), *cert. denied*, 102 N.M. 293, 694 P.2d 1358 (1985), the court of appeals, while reversing the Board of Education's denial of a teacher's application for recertification, held that under the COEA the establishment of guilt (based in that case on a jury verdict) constitutes a "conviction" and that imposition of sentence is not necessary to complete the conviction for purposes of the Act. We approve this reading of the Act and hold that the conviction *itself,* without regard to its underlying conduct, is sufficient to support a license revocation under the COEA and under the Dental Act.

Weiss points to *Garcia*'s approving quotation from a California case:

> [T]he legislative purpose of including the "conviction" of certain crimes as grounds for discipline * * * is * * * to reach those who have actually committed the underlying offenses. The conviction is significant in the statutory scheme only insofar as it is a reliable indicator of actual guilt.

*Id.* at 310, 694 P.2d at 1375 (quoting *Cartwright v. Board of Chiropractic Examiners*, 16 Cal.3d 762, 773, 129 Cal.Rptr. 462, 470, 548 P.2d 1134, 1142 (1976)). Weiss argues that the convictions in his case are not reliable indicators of his actual guilt because they resulted from pleas of *nolo contendere* and an *"Alford"* plea of guilty and were not preceded by an actual trial and a judge or jury finding of guilt. He thus raises the question whether under New Mexico's statutory scheme a license can be revoked on the basis of a conviction alone without regard to the licensee's "actual guilt."

We are not inclined to depart from the plain language of the statutes and the holding in *Varoz* that a conviction constitutes a separate, independent and adequate basis for revoking a license. In *Varoz* we relied in part on the case of *South Carolina State Board of Dental Examiners v. Breeland*, 208 S.C. 469, 38 S.E.2d 644 (1946), which held that a conviction of rape would be treated as a conclusive determination that the licensee had been guilty of immoral or dishonorable conduct. *Breeland* in turn relied on *Hawker v. New York*, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898), which said:

> The conviction is, as between the state and the defendant, an adjudication of the fact. So, if the legislature enacts that one who has been convicted of crime shall no longer engage in the practice of medicine, *it is simply applying the doctrine of res judicata,* and invoking the conclusive adjudication of the fact that the man has violated the criminal law.

*Breeland*, 208 S.C. at 479, 38 S.E.2d at 649 (emphasis in original) (quoting *Hawker*, 170 U.S. at 196, 18 S.Ct. at 576). In the present case, two statutes provide that conviction of a felony shall be a sufficient basis for revoking a license. In addition to the *res judicata* effect that the legislature has given to the convictions, the statutes also reflect a legislative policy that public confidence in the practitioners of a profession should not be undermined by the licensing of convicted felons. In any event, it is within the legislative prerogative, in defining "the qualifications one shall possess in order to engage in the practice of dentistry" (*Breeland*, 208 S.C. at 476, 38 S.E.2d at 647), to prescribe the conditions under which the privilege (*Hawker*, 170 U.S. at 195, 18 S.Ct. at 576) or the "property right" (*Varoz*, 104 N.M. at 457, 722 P.2d at 1179) of so practicing shall be enjoyed.

If the Board had proceeded against Weiss on some other ground for revoking a license as set out in the Dental Act—for example, obtaining or attempting to obtain a fee by fraud or misrepresentation, proscribed in Section 61-5-14(A)(14)—and the convictions here were offered as proof of his having engaged in the proscribed conduct, then the fact of the convictions themselves might well not be taken as conclusive proof that he had done so, and the nature of his pleas might well be material in his attempt to show that, in truth, the convictions were not a reliable indicator of his actual guilt. Here, however, the Board proceeded, as it had authority to do under the applicable statutes, by charging the convictions themselves as the basis for revocation. In so doing the Board left itself open to the possibility that Weiss would be able to demonstrate his rehabilitation (as to which more below), but it was also entitled to take the legislature at its word and rely on the convictions themselves to revoke the license if rehabilitation was not proved. The legislature having spoken, the only question is whether it has exceeded its power to prescribe reasonable conditions surrounding the holding of a license to practice dentistry. That question, as we have seen, answers itself.

■ Focusing on the statutes, however—and particularly the COEA—Weiss contends that use of a conviction to revoke a license, without proof of the underlying conduct, runs afoul of Section 28-2-3(A) in that the conviction is then allowed to operate as an "automatic bar" to the licensee's retaining his license to practice his profession. There are two answers to this contention. First, use of a felony conviction under both the Dental Act and the COEA to revoke a license is only permissive; it is not mandatory, as it would be if the conviction did in fact operate as an automatic bar. Nothing in either statute requires, in other words, that once a licensee has been convicted of a felony, his or her license shall automatically be revoked. On the contrary, under the COEA, the board or other agency must explicitly state in writing the reasons for a decision prohibiting a licensee from engaging in his or her profession if the decision is based on conviction of a crime directly relating to the profession. Section 28-2-4(B). This is a mandatory requirement. *See New Mexico Bd. of Pharmacy v. Reece*, 100 N.M. 339, 341-42, 670 P.2d 950, 952-53 (1983); *McCoy v. New Mexico Real Estate Comm'n*, 94 N.M. 602,

603, 614 P.2d 14, 15 (1980) (" 'If the conviction of a crime is to operate as other than an "automatic bar" to employment,' the relevant state agency must state the reasons for the conclusion that the criminal offender cannot maintain or pursue their employment.") (quoting *Bertrand v. New Mexico State Bd. of Educ.*, 88 N.M. 611, 615, 544 P.2d 1176, 1180 (Ct.App.1975), *cert. denied*, 89 N.M. 5, 546 P.2d 70 (1976)).

Secondly, in addition to stating the reasons why the licensee is to be prohibited from engaging in his or her profession on account of the criminal conviction, the board must find that the licensee has not been rehabilitated and must state its reasons for this conclusion. While the requirement of non-rehabilitation as a condition to non-licensure is expressly set out only in Section 28–2–4(A)(2) (where the conviction does not directly relate to the particular employment, trade, business or profession), this Court has construed that requirement as applicable to *both* Subsection 28–2–4(A)(1)) (felony "directly relates" to particular employment, etc.) *and* Subsection 28–2–4(A)(2) ("does not directly relate" to particular employment, etc.). In *Reece* we held that, in light of the COEA's purpose of encouraging the rehabilitation of criminal offenders by removing barriers to their employment, a finding of rehabilitation *vel non* should be made before denying or revoking a license because of a criminal conviction, whether the conviction is one falling under Subsection (A)(1) or under (A)(2). 100 N.M. at 341, 670 P.2d at 952. *See also Garcia*, 102 N.M. at 310, 694 P.2d at 1375. The distinction between the two subsections, we held, relates to allocation of the burden of proof: Where the crime "directly relates" to the profession at issue, the licensee has the burden to prove rehabilitation; if the crime does not so directly relate, the agency has the burden of proving non-rehabilitation. *Reece*, 100 N.M. at 341, 670 P.2d at 952. We are not asked, nor are we inclined, to retreat from this interpretation of the statute.

■ Accordingly, we hold that a conviction itself—as distinguished from its underlying conduct—is a sufficient basis for a license revocation under the Dental Act and the COEA; but we reaffirm the requirements that, in order for a conviction to be used for this purpose, the licensing agency must explicitly state its reasons for a decision prohibiting the licensee from engaging in his or her employment or profession and that the agency must find that the licensee has not been sufficiently rehabilitated to warrant the public trust and must give reasons for this finding.

■ In this case the Board explicitly found in Finding No. 16 that Weiss's "protracted course of conduct" involved grossly incompetent performance of dental services, the obtaining of fees by fraud or misrepresentation, and the making of false or misleading statements regarding the value of his dental treatments. This finding, or set of findings (which, as we shall see, were supported by substantial evidence), constituted an adequate statement of the reasons why Weiss was to be prohibited from continuing his practice as a dentist and why he was not sufficiently rehabilitated to warrant the public trust.

### III. *Adequacy of Notice of Contemplated Action*

Dr. Weiss asserts that the Board committed the following error: "The amended notice of contemplated action was based only upon the criminal convictions following the plea agreement." The quoted assertion is true. The Board did not include in the NCA any other basis for revoking Weiss's license; nor, as we have seen, was it required to—the convictions themselves provided an adequate basis for the Board's contemplated action. Under the Uniform Licensing Act, Weiss was entitled in the notice of contemplated action to an indication of the general nature of the evidence to be relied on by the Board if his license was to be revoked. Section 61–1–4(B). The NCA served on Weiss fulfilled this function; it advised him of the contemplated action—suspension or revocation of his license—and of the general nature of the evidence to be relied on—the fact of his convictions of making or permitting a false claim for reimbursement for public assist-

ance services. This was sufficient under *McCoy v. New Mexico Real Estate Comm'n, supra,* to afford Weiss adequate notice of the charge against him and the facts to be relied on in taking action against his license, and to provide him an opportunity to prepare his defense.

Weiss asserts, however, that the Board's NCA gave no notice that he would have to defend himself against charges of unprofessional conduct or grossly incompetent performance of dental services, as found by the Board in Finding No. 16. This raises the question whether the NCA must describe not only the grounds asserted against the licensee as a basis for the contemplated disciplinary action, but also the facts to be relied on by way of the explanatory reasons for the action to be taken and for a finding that the licensee has not been rehabilitated.

Section 61–1–4(B) provides in part:

When a board contemplates taking any action [not to renew, to suspend, or to revoke a license] * * *, it shall serve upon the licensee a written notice containing a statement:

(1) that the board has sufficient evidence which, if not rebutted or explained, will justify the board in taking the contemplated action; [and]

(2) indicating the general nature of the evidence * * *.

■ The grounds for revoking or suspending a license under Section 61–5–14(A) comprise some sixteen enumerated deficiencies, including the one at issue here, conviction of a felony. We think that construing Sections 61–1–4(B) and 61–5–14(A) together requires the conclusion that the "evidence" to be set out in the NCA under the former statute is the evidence of the ground or grounds to be relied upon in taking the contemplated action under the latter statute, not the evidence to be adduced by way of explanation and determination of rehabilitation under the COEA. *Cf. Hickey v. Wells,* 91 So.2d 206, 209 (Fla.1956) (for license suspension due process requires either "a procedure for disclosure * * * or else specific accusation," but not both).

Our conclusion finds support in the rather extensive, additional procedural protections given to the licensee under the Uniform Licensing Act, particularly those relating to discovery. Under Section 61–1–8(A) the licensee is entitled to subpoenas and subpoenas duces tecum issued as of right before commencement of the hearing to compel discovery upon written request to the board or hearing officer. Upon written request to another party, the licensee is entitled to obtain the names and addresses of the witnesses who will or may be called by the other party to testify at the hearing and to inspect and copy any documents or items which the other party will or may introduce into evidence. Section 61–1–8(B). The licensee may also take depositions, in the same manner as in a court proceeding under the Rules of Civil Procedure, simply by serving a notice. Section 61–1–8(C). These broad discovery rights are further implemented by the provisions in Section 61–1–9 giving the board power to issue subpoenas and to impose evidentiary sanctions against a recalcitrant party.

■ The provisions of the Uniform Licensing Act, therefore, are quite similar to those regulating court proceedings. The notice of contemplated action serves the same function as a complaint in a civil case, affording notice to the party against whom relief is sought of the facts alleged to justify the relief, but not going into extensive evidentiary detail in support of those facts. *See Petty v. Bank of New Mexico Holding Co.,* 109 N.M. 524, 526–27, 787 P.2d 443, 445–46 (1990). Those details, including any surrounding the board's explanation for prohibiting the licensee from continuing his or her profession and any relating to whether or not he or she has been rehabilitated, can be obtained in discovery. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1375, at 567–68 (1990) (complaint intended simply to put defendant on notice of basic nature of case; "primary burden of information exchange and issue delineation is to be borne by the discovery process"); *cf. Redman v. Board of Regents,* 102 N.M. 234, 238, 693 P.2d 1266, 1300 (Ct.App.1984),

*cert. denied,* 102 N.M. 225, 693 P.2d 591 (1985) (discovery rules adopted to allow full preparation of a case in court or administrative context).

■ We thus hold that the notice of contemplated action in this case was not deficient for failing to include facts or evidence regarding the matters set out in Finding No. 16.

### IV. *Substantial Evidence Supporting Board's Explanatory Facts and Determination of Non–Rehabilitation*

Several of Dr. Weiss's points of error are framed as an attack on the Board's findings and decision for lack of substantial evidence. These are variously phrased as an assertion that the Board relied on lay testimony when expert-witness—*i.e.,* a dental expert—evidence should have been adduced; an argument that the Board relied upon hearsay and other incompetent evidence and that there was no "residuum" of legally competent evidence to support its findings; and a claim that Weiss's own evidence that he was rehabilitated was unrebutted and that the Board's finding to the contrary lacked support. Weiss also claims error in the Board's consideration of the grand jury indictment and testimony concerning it. We have reviewed these claims and find no error.

Before considering each of Weiss's arguments, it may be helpful to summarize some of the evidence adduced at the hearing. We do this in light of the whole-record standard of review set out in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board,* 101 N.M. 291, 294, 681 P.2d 717, 720 (1984), and *New Mexico State Board of Education v. Abeyta,* 107 N.M. 1, 3, 751 P.2d 685, 687 (1988).

■ The Board considered testimonial and documentary evidence which showed that Weiss performed numerous examinations on nursing home patients, for which he billed Medicaid, lasting less than one minute per patient and consisting of the patient's opening his or her mouth so that Weiss could look inside. In his practice, Weiss billed for services he did not perform (such as billing for dentures not delivered and charging for porcelain-fused-to-metal crowns while providing less costly non-precious metal ones); for performing multiple procedures where one would suffice; and for hasty, unauthorized treatment of four nursing home patients, one of whom was treated by Weiss without his having been informed of the patient's medical history. A state Medicaid administrator who handled claims by Weiss testified that he continued to bill improperly after having been put on notice of the defects in his charging for services. Such evidence, coming from various nursing home employees who had contact with residents seen by Weiss, as well as from employees of Weiss who were familiar with his dental and billing practices, was sufficient to support the findings of the Board.

### A. Legally Competent Evidence—the "Residuum" Rule

Under *Willoughby v. Board of Veterinary Examiners,* 82 N.M. 443, 483 P.2d 498 (1971), "the revocation or suspension of a license to conduct a business or profession must not be based solely upon hearsay evidence, and other legally competent evidence, together with the hearsay evidence, must substantially support the findings upon which the revocation or suspension is based." *Id.* at 444, 483 P.2d at 499. This is an application in the licensing context of the so-called "residuum" rule of *Young v. Board of Pharmacy,* 81 N.M. 5, 8, 462 P.2d 139, 142 (1969) ("[A] finding is not substantially supported absent the presence of at least a residuum of evidence competent under the exclusionary rules."). The rule is based on the notion that the right to practice a profession—that is, the right to earn a livelihood—is a property right, and "any action depriving [a person] of that property must be based upon such substantial evidence as would support a verdict in a court of law." *Id.* at 9, 462 P.2d at 143. *See generally* Browde, *Substantial Evidence Reconsidered: The Post–Duke City Difficulties and Some Suggestions for Their Resolution,* 18 N.M.L.Rev. 525, 530 (1988).

The evidence recapitulated above constituted more than a "residuum" supporting the Board's findings.

B.  Necessity of Expert Testimony

■ Dr. Weiss charges that the Board could not revoke his license without testimony from a dental expert that he had submitted a false claim for reimbursement. He says: "The only evidence presented by the State against Weiss was that of lay persons," and "the State introduced *no* dental expert testimony whatsoever relevant to the issue in the Notice of Contemplated Action." As support for his proposition that expert testimony is required, he cites two cases, *Beattie v. Firnschild,* 152 Mich.App. 785, 394 N.W.2d 107 (1986), and *State v. Luna,* 92 N.M. 680, 594 P.2d 340 (Ct.App.1979).

Neither of these cases supports the proposition. Nor are we aware of any other authority that would require expert evidence on the issues before the Board in this case. Where an argument is not supported by authority, this Court may disregard it. *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (arguments in briefs unsupported by cited authority not heard on appeal).

The points as to which Weiss maintains expert testimony was required include the charges that he submitted a false claim for reimbursement and that he was guilty of unprofessional conduct and failed to practice dentistry in a professionally competent manner. Neither of these points necessitated expert testimony. The first is a statement of the charge leading to the conviction; the convictions themselves were never at issue in the proceeding and were admitted into evidence. The second is a paraphrase of Finding No. 16, and nothing in that finding depended on expert evidentiary support. On the contrary, where the agency conducting the hearing is itself composed of experts qualified to make a judgment as to the licensee's adherence to standards of professional conduct, *see* Section 61-1-11(C), there is no need for the kind of assistance an expert provides in the form of an opinion under Rule 11-702 of the Rules of Evidence. The testimony of lay witnesses was fully competent to establish the facts upon which the Board could render its decision in this proceeding.

C.  Evidence of Rehabilitation

Characterizing his evidence of rehabilitation as "unrefuted," Dr. Weiss argues that the testimony of his witness, a psychologist, to the effect that Weiss would be unlikely to commit a nonviolent criminal act in the future should have led to a finding by the Board that he was sufficiently rehabilitated to warrant the public trust. As with other disputed fact issues before the Board, he maintains that expert testimony, or at least testimony based on personal knowledge, was necessary to enable the Board to find that he was not rehabilitated. Apparently, Weiss contemplates that the only competent evidence of rehabilitation or its opposite is testimony of a psychologist or another witness whose personal familiarity with the licensee can produce an opinion as to whether the licensee is or is not rehabilitated.

■ However, whether or not the person has been sufficiently rehabilitated to warrant the public trust is a factual issue upon which the Board is entitled to make a finding in the same way as it disposes of all the other factual issues coming before it. The opinion of an expert may, of course, be probative on the issue; and the Board may likewise consider all other relevant facts, adduced by lay and expert witnesses alike, tending to make more or less probable the fact in question. *See* SCRA 1986, 11-401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). From the facts we have summarized the Board could easily have concluded that Weiss had not met his burden of proof on this issue.

D.  Reference to Grand Jury Indictment

■ The Board received the testimony of the prosecutor who assisted the grand jury in its investigation and indictment of

Dr. Weiss. The indictment itself was referred to, but it apparently was not offered nor received into evidence. We regard this evidence, even though potentially prejudicial and distracting, as sufficiently harmless under the facts of the case as not to warrant reversal.

First, we reject Weiss's contention that references to the indictment were inadmissible under Section 28–2–3(B) of the COEA. That section prevents use of certain criminal records—namely, records of arrest not followed by a conviction and misdemeanor convictions not involving moral turpitude—but does not include grand jury indictments or criminal informations within its prohibition. The indictment was excludable, not because it is listed in Section 28–2–3(B), but because it was hearsay. The state's excuse for referring to it was to give the Board a "perspective on how the case developed," not for the truth of the matters set out in the document. The Board accepted this limited purpose and stated that it would consider the indictment only "as background," not for the truth of its contents.

In so ruling, the Board came perilously close to committing reversible error by considering rank hearsay that was undeniably prejudicial in its impact. However, the Uniform Licensing Act "clearly contemplates that a board may admit and consider hearsay evidence, if it is of a kind commonly relied upon by reasonably prudent men in the conduct of serious affairs." *Willoughby*, 82 N.M. at 444, 483 P.2d at 499 (citing Section 61–1–11). While this evidence, standing alone, clearly would have been insufficient under the "residuum" rule of *Young v. Board of Pharmacy* to sustain revocation of Weiss's license, there was, as we have already noted, more than a residuum of competent evidence to satisfy the *Young* test in this instance. Accordingly, and since an agency has such wide discretion in receiving and excluding evidence in proceedings under the Uniform Licensing Act, we conclude that any error here was harmless.

## V. *The District Court's Denial of the Motion to Supplement the Record*

■ Dr. Weiss points to Section 61–1–18 as authority for the contention that his third motion to supplement the record should have been granted by the district court. The last sentence of that section provides: "The court may require or permit subsequent corrections or additions to the record when deemed desirable." Although this section might appear to permit "additions" to the record before the Board in the form of additional evidence not presented to the Board, we have held that "the scope of review of the district court upon appeal from the board excludes evidence not offered at the hearing, 'except that in cases of alleged omissions or errors in the record, testimony thereon may be taken by the court.'" *Willoughby*, 82 N.M. at 444, 483 P.2d at 499 (quoting from NMSA 1953, § 67–26–20, now § 61–1–20). The scheme of the Uniform Licensing Act is that the district court sits as a court of review, not to try the case *de novo;* the court may not substitute its judgment for the board's and may not receive evidence not offered at the board hearing. This recognizes the fact-finding competence where the legislature placed it—with the board—and reaffirms the court's function as that of reviewing the evidence for its sufficiency in supporting the board's findings and of passing upon any legal issues implicit in the board's decision.

■ The evidence which Weiss sought to have the court consider was the opinion of an expert criminal lawyer that his (Weiss's) plea of guilty had been unknowingly and unintelligently given and that he had received ineffective assistance of counsel in the criminal proceedings leading to his convictions. The relevance of this evidence, presumably, related to Weiss's own testimony before the Board that he had not understood the consequences of his guilty plea (or pleas of nolo contendere) and that he had not knowingly committed criminal acts. This testimony, if believed, would tend to contradict the inference from Weiss's guilty plea and would suggest that, despite the pleas, he had not in fact com-

mitted the offenses charged in the criminal information leading to his convictions.

This view of the evidence did not require, or even permit, the district court to consider it on Weiss's motion to supplement the record. First, the issue before the court was not whether there was substantial evidence to support a finding that Weiss had in fact made a false claim for reimbursement for services provided to a recipient of public assistance. The extent to which he understood the consequences of a plea of guilty to this offense might bear on whether the plea should be relied upon in finding that fact, but the Board made no such finding. It found that he had been *convicted* of the felony offense defined as "making or permitting a false claim for reimbursement for public assistance services" and revoked his license based upon that finding. Thus, the proffered affidavit was irrelevant to the issue before the court.

Secondly, the thrust of the affidavit obviously went to an attempt by Weiss to convince the district court to set aside the convictions as grounds for the Board's action. Again, if a conviction is offered as proof of the underlying offense—whether by way of the accused's admission, or as collateral estoppel, or in some other way—it may in some circumstances be treated as not conclusive of the facts constituting the underlying offense. *See, e.g., Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (accused's plea of guilty and conviction did not bar, through collateral estoppel, subsequent civil rights action against police for unlawful search). Here the convictions were neither offered nor received as proof of the underlying conduct; they constituted an independent ground in themselves for the license revocation.

Even were this not the case and the convictions were considered only as evidence of a ground for revocation rather than the ground itself, we would not allow them to be collaterally attacked as proposed by Weiss. As we noted in *Varoz*, the convictions as presented to the Board were final and presumptively valid. As was true of Dr. Varoz, Dr. Weiss "may not collaterally attack his conviction in a disciplinary proceeding before an administrative board which is totally without jurisdiction to determine the validity of the conviction, or to overturn or vacate it." 104 N.M. at 458, 722 P.2d at 1180. Even if the opinions expressed in Weiss's expert's proffered affidavit were accepted as true, the district court could not properly ignore the convictions on which the Board had relied in revoking the license. Weiss's only remedy, if any, is to seek to set aside his convictions in the court that rendered them and then, if successful, petition the Board for reinstatement of his license.

The district court did not err. Its judgment is therefore affirmed.

IT IS SO ORDERED.

RANSON and WILSON, JJ., concur.